**DIXIEPIG CORPORATION et al. v. PIG STAND CO.**

No. 10780.

Court of Civil Appeals of Texas. Dallas.
July 8, 1930.

Rehearing Denied Oct. 4, 1930.

D. A. Frank, W. B. Hamilton, and Louis Wilson, all of Dallas, for appellants.

Wm. M. Cramer, of Dallas, for appellee.

VAUGHAN, J.

Appellee, Pig Stand Company, a private corporation, instituted proceedings in the court below against appellants, Dixiepig Corporation, a private corporation, and Louis Wilson, for an injunction restraining appellants from practicing alleged unfair trade competition in the use of certain advertising in connection with the business of Dixiepig Corporation, and for damages. Appellants answered by general demurrer, general denial, and certain special pleas, which will be developed in the discussion of the propositions upon which this appeal is predicated. On March 29, 1930, hearing was had and judgment rendered on appellee's application for a temporary injunction, enjoining and restraining appellants, until a hearing could be had upon the merits of said suit, from using the terms "Dixiepig Sandwich" and "Dixiepig Stand," or any other equivalent thereto, and from using appellee's corporate name, Pig Stand Company, or its equivalent, Dixiepig Corporation, in the advertising of appellant's business, or in connection with the sale or marketing of appellants' sandwiches, said injunction to apply to any concern or association or business owned, controlled, or participated in by the appellants. The trial court, as basis for said judgment, found that the trade-marks of appellee and appellant "are conflicting; that the purchasers of the goods, wares, merchandise, sandwiches, etc., of the kind sold by the parties, were misled by the trade-mark of defendants and thought they were purchasing the goods of plaintiff; that the defendants and their predecessors in interest adopted said trade-mark for the purpose of palming off his goods as those of plaintiff to the damage of plaintiff."

Appellee's trade-mark is represented by a picture of a pig in a natural walking position, head down, with the words "Pig Sandwich" extending from shoulder to hind leg, midway of the body of the hog; and signs at appellee's stands, in addition to the above trade-mark, read as follows: "Sandwich at the Pig Stands." Appellee sold a variety of sandwiches—including pork, beef, hamburger, pimento cheese, and ham—which were wrapped in separate paper, bearing appellee's "Pig Stand" trade-mark, before being served. Appellee's trade-mark was registered in the United States Patent Office November 5, 1924.

Appellants' trade-mark was duly registered in the United States Patent Office July 21, 1925, and consists of a picture of a pig standing erect with a checked cap on head, a white apron fastened around neck and tied just below the shoulders, the apron extending to hoofs, a checked tie around neck, pig holding a knife as a waiter in front hoofs, with a sandwich thereon, and the word "Dixiepig" immediately under the "waiter," and the trade-mark representing the pig as a waiter. On paper napkins used by appellants the above trade-mark is reproduced with the words "Ask for" at the head of the pig, and underneath the pig's feet the word "Sandwich," followed by the words "Made Right for Your Delight." Appellants' sandwich stands are designated by signs containing the above trade-mark posted in several conspicuous places on and around each stand. All of the printed matter used in conducting its business bears this trade-mark.

To show that it was entitled to the relief sought, the burden of proof rested on appellee to establish either (a) that it and its predecessors had the right to appropriate the words "Pig Sandwich" to its exclusive use as an original technical trade-mark, or (b) that the words "Pig Stand" possessed a secondary meaning in the public mind, which designated appellee's goods and furnished the basis for the charge of unfair competition, and that ap-

pellant Dixiepig Corporation had employed the words "Pig Sandwich," in conducting its business, in a way from which it could be reasonably presumed that sales of appellants' goods had and would be made as those of appellee.

■■ Viewed in its most favorable light, the evidence failed to disclose facts under which appellee and its predecessors could rightfully appropriate the words "Pig Sandwich," as said words can only refer to some character of food products, and certainly cannot be regarded as fanciful or arbitrary symbols designed to show the origin of the merchandise or goods to be found on sale at appellee's places of business, designated as "Pig Stands." It is to the origin of the article and not its quality that a technical trade-mark is intended in its effect to direct the public mind. The doctrine of technical trade-marks, as firmly established by federal and state decisions, will not permit essentially descriptive words to be employed to indicate the source of an article intended for sale in the market, because, as held in the case of Kellogg Toasted Corn Flake Co. v. Quaker Oats Co. (C. C. A.) 235 F. 657, 663, "for the manifest reason that the fact expressed by the primary meaning of such words is a fact which others are entitled to express by the same words for the same purpose."

■ The trade-marks of appellant Dixiepig Corporation and appellee, Pig Stand Company, were before the trial court and inherently presented the individuality and similarity, if any, between the symbols and language used in said trade-marks, respectively, and carried their own evidence, indisputable as to whether or not there was any resemblance between the two, and, if so, whether or not the trade-mark of appellant Dixiepig Corporation was of such a resemblance to that of appellee that said appellants' trade-mark was calculated to deceive persons of ordinary intelligence, and the trial court was not authorized to receive evidence from any other source to determine said matters. Radam v. Capital Microbe Destroyer Co., 81 Tex. 122, 16 S. W. 990, 992, 26 Am. St. Rep. 783, from which we quote, viz.: "All the facts were before the court—the trade-marks, the labels, the jugs, and the packages—as presented for sale in the market. It was his province to decide what impression would be made by them upon persons of ordinary intelligence and care. In such a case an expert should not be allowed to decide for him. Cooper v. State, 23 Tex. 331; Turner v. Strange, 56 Tex. 142; Railroad v. McGehee, 49 Tex. 481; McKay v. Overton, 65 Tex. 85; Shelley v. City of Austin [74 Tex. 612, 12 S. W. 753], supra; Whart. Ev. § 436."

■ Considering only the evidence furnished by said trade-marks, we do not think it can be drawn therefrom that there exists any conflict between same, either in the language used or in the symbols, or that the trade-mark of appellant Dixiepig Corporation was reasonably calculated to deceive purchasers whereby purchase of appellants' goods would be made believing same to be the product of appellee. We have not been able to gather therefrom any similarity further than that which exists between hogs generally, from which resemblance we think it quite improbable for an ordinary purchaser, purchasing as such persons ordinarily do, to be deceived. Radam v. Capital Microbe Destroyer Co., supra; Dallas Plumbing Co. v. Dallas County Plumbing Co. (Tex. Civ. App.) 253 S. W. 308; Grand Temple, etc., v. Independent Order, etc. (Tex. Civ. App.) 28 S.W.(2d) 212.

■ The finding that appellant Dixiepig Corporation and its predecessors in interest adopted the trade-mark containing the word "Dixiepig" for the purpose of palming off the goods of appellant, Dixiepig Corporation, as those of appellee, to the damage of appellee, is not sustained by evidence of any probative force. The facts and circumstances testified to by the different witnesses, taken in connection with the different trade-marks, do not suggest in sufficient cogent form the existence of facts upon which this finding can be predicated, the nearest support in the evidence being the presumption that followed in the wake of the trial court's finding, above stated, aided by evidence of witnesses, inadmissible for that purpose, to the effect that there was such similarity between said trade-marks, and that some purchasers had been misled by the same. In order to sustain this finding, there must be some evidence establishing the following acts and conduct, viz., that the trade-mark of appellant Dixiepig Corporation was adopted as a device or trick whereby its goods were palmed off in the market as and for the goods of appellee in fraud of the public and of appellee through the simulation of labels, imitation of appellee's style of putting up goods, reproduction of the form, color, and general appearance of its packages, and that said appellant passed off its goods as the goods of appellee upon the public. Simmons Med. Co. v. Mansfield Drug Co., 93 Tenn. 84, 23 S. W. 165; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., supra; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365.

■■ As to the secondary meaning of the words used, the evidence failed to show that said words had generally acquired a secondary meaning, indicating appellee's product so as to become a trade-mark, said words so employed being descriptive, did not acquire a secondary meaning referable only to appellee's product. The test of secondary mean-

ing is whether the trade-mark has become broadly known throughout the public as denoting a product of a certain origin. Mims on Unfair Competition and Trade Marks (3d Ed.) parag. 38a, p. 117; Crescent Tool Co. v. Kilborn & Bishop Co. (C. C. A.) 247 F. 299, 301. There is no secondary meaning of the words "Pig Stand" and "Pig Sandwiches" in the public mind established, since there is no common source; the true basis of secondary meaning may be said to be that the word or phrase to be given such meaning has been used so long and exclusively by one producer with reference to his articles that the word has come to mean that the article is his product. To establish this secondary meaning the burden of proof rested upon appellee and is a substantial burden, that is, one to be emphatically discharged, since the ultimate to be proven is fraud, that is, that appellants were using appellee's trade-mark in its secondary meaning and not simply in a primary sense, with the result accomplished that appellant Dixiepig Corporation passed off its goods as those of appellee. Upjohn Co. v. W. S. Merrell Chemical Co., 269 F. 209, 211 (C. C. A. 6th Cir. 1920).

Can the judgment of the court be sustained on the ground of unfair competition? Unfair competition cannot be predicated alone on the use of another's trademark, which is invalid, because not appropriable as such, that is to say, when not used in such a way by the defendant as to amount to fraud upon the public. Samson Cordage Works v. Puritan Cordage Mills (C. C. A.) 211 F. 603, 608, L. R. A. 1915F, 1107. Even conceding that there existed a conflict between the trade-marks of appellant and appellee, and that the proof established similarity in form, dimensions, or general appearances alone of the package, or the container in which appellant's products were inclosed, we do not think same would be sufficient to establish unfair competition. In the case of Marvel Co. v. Pearl et al. (C. C. A.) 133 F. 160, 161, the court held: "Unfair competition is not established by proof of similarity in form, dimensions, or general appearance alone. Where such similarity consists in constructions common to or characteristic of the articles in question, and especially where it appears to result from an effort to comply with the physical requirements essential to commercial success, and not to be designed to misrepresent the origin of such articles, the doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition." (The words "Pig Stand," it should be stated, are not here involved.) The trademark "Pig Sandwich" is claimed by appellee, and that of "Dixiepig" for sandwiches is claimed by appellant Dixiepig Corporation.

The words "pig sandwiches" are purely common English words, generic, denoting no fact of ownership or common source by which it can be identified by dealings or associations, and it is likewise true of the corporate name of appellee, being the same as the purported trade-mark. The word "Dixiepig" is not a common English word, not to be found in Webster's or other English dictionaries; it is fanciful in every respect, arbitrary, and therefore subject to exclusive appropriation. The trade-mark of appellant Dixiepig Corporation is so absolutely unlike appellee's trademark that it follows as a self-evident proposition that no ordinary prudent person of reasonable intelligence should be supposed to confuse the one with the other. The testimony in this case, we think, without any controversy established that appellee's predecessor, Jessie G. Kirby, did not originate the purported trade-marks "Pig Stand" and "Pig Sandwiches," but that same originated long prior to appellee's connection therewith through the ingenuity of ——— Prescott and ——— Davis, in the year 1916, and applicable to this situation we quote from the opinion in Diamond Drill Co. v. International Drill Co., 106 Wash. 72, 179 P. 120, 124, viz.: "If * * * at the time of its organization the business of drilling with diamond drills was known and being carried on by individuals or by corporations, the respondent could not then, by merely first combining the words into the name, acquire exclusive ownership of that name. * * * The fact that there were diamond drill contractors at the time respondent commenced as a diamond drill contracting company, puts it out of the class of originators and puts it into the class of imitators."

Under all of the material facts established, we are of the opinion that appellants' fifth assignment of error, viz., "The court erred in not refusing said temporary injunction herein as against the defendants, for the reason that defendants' trade-mark Dixiepig, for sandwiches, is valid and exclusive, being a coined word and is fanciful and arbitrary both as to symbol and as to form of words being unlike the trade-marks of the plaintiff actual or palpable, the same being granted under the amendment of the basic Trade-Mark Act of 1905, it being shown by the evidence that there is no apparent conflict or infringement of its labels, design and color to that of the plaintiffs herein, or that defendants dealt unfairly with the goods of the plaintiff," should be, and it is, sustained. The judgment of the court below is reversed, and the temporary writ of injunction granted by it is in all things dissolved, with costs adjudged against appellee.

Reversed and rendered.