## AVNET et al. v. TEXAS CENTENNIAL CENTRAL EXPOSITION.

### No. 12318.

Court of Civil Appeals of Texas. Dallas.

July 11, 1936.

Rehearing Denied Sept. 26, 1936.

Robert B. Allen, Jr., and D. A. Frank, both of Dallas, for appellants.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, Texas Centennial Central Exposition, a corporation, instituted this suit against appellants—D. Avnet, Mrs. Jennie Avnet, and Isobel Avnet, a partnership doing business under the trade-name of Centennial Room-Rental Association—to enjoin them from using the word "Centennial" in such name. On a hearing before the court, a temporary writ of injunction was issued, enjoining appellants from using the word "Centennial" in their trade-name, unless they shall place a statement in immediate connection with such name, to the effect that their room-rental association is not the official room-rental agency of appellee, and restraining them from using any of the pictures of any improvements on the premises of appellee. The injunction also restrained appellants from using or selling any guidebook in which either by the use of appellee's name or some other method, from which it is represented or implied that the guidebook is connected with, or sponsored by, the Texas Centennial Central Exposition. Appellants have perfected this appeal to this court, and the following is a sufficient statement of the case:

In respect to that portion of the injunction which restrains the issuance of the guidebook to be published by appellants, they allege and show by evidence

that they have abandoned the plan of using the name "Texas Centennial Historical Guide and Souvenir," and have adopted in lieu thereof the name "Texas Historical Guide and Souvenir," as the name of their guidebook. This apparently meets the objection of appellee to the name to be given appellants' guidebook, and this part of the judgment appealed from will not be further discussed.

In November, 1935, appellants formed their association for the purpose of doing a room-rental business in the city of Dallas, and in December, 1935, adopted the name "Centennial Room-Rental Association" as a trade-name for their partnership, and complied with the law for doing business under an assumed name. Their plan was to make a canvass of the city of those persons who desired to rent rooms or apartments to visitors, who came to Dallas during the Centennial year, and to continue the business after the close of the Centennial Exposition. For remuneration for such work appellants charge a commission from all owners, who should list their premises with the association for the purpose of securing roomers.

Appellee recognized the fact that, during the existence of the exposition, Dallas would be heavily taxed for rooms and living quarters for the large number of people it was anticipated would attend. So, the Dallas Chamber of Commerce, working with appellee and its managers, for the purpose of making the Centennial Exposition a success, advertised in the city papers for a listing with it of the names and locations of houses, that would have rooms or apartments to rent to visitors. It was also widely published that no charge would be made of any landlord for this service, by the Chamber of Commerce, in assisting landlords to rent rooms during the exposition. This work by the Chamber of Commerce was done for the purpose of assisting appellee in making the Centennial Exposition a success.

This condition existed until March 16, 1936, when appellee took over the work of securing rooms for the housing of visitors during the exposition, as a part of its work, and appointed as its director of this department Mr. Frank M. Smith, who on said date took over the list for room-rentals that had been secured by the Chamber of Commerce, and

organized the department of housing visitors, under the name of the "Centennial Housing Bureau," and completed an organization of some forty to fifty employees for the purpose of making a thorough canvass of the city for housing accommodations for the exposition visitors, for the listing of names of persons who had rooms to rent to such visitors, and, for the doing of this work, no fee whatever was charged the landlord, and this fact was generally advertised. The work done by appellee in this respect, under its name of Centennial Housing Bureau, and the work done by appellants under their name of "Centennial Room-Rental Association," is substantially the same work; the only difference being that appellants charged for their services and the Centennial Housing Bureau, operated under the direction of appellee, did not charge for its services. The pleadings of the parties are very voluminous, and we will only give a brief summary of the salient contentions of each of the parties.

Appellee contends that, by reason of its charter name, Texas Centennial Central Exposition, the word "Centennial" had been given a special meaning, and that when the word is used in work incident to the Centennial Exposition, the public is led to believe, by the use of such name, that such work is under the direction of appellee, and that by reason thereof much confusion has occurred in the minds of the public as to the status of the Centennial Room-Rental Association; that owners of property in Dallas have been misled because of the use of the word "Centennial" in appellants' trade-name, and have dealt with the Room-Rental Association under the belief that they were dealing with appellee; and that by reason of such confusion appellee has suffered damages. The allegations in this respect are full and complete and much more specific than above stated. Appellee further contends that, by the employment of the word "Centennial" in their trade-name, and because of its now special significance, appellants are guilty of unfair competition. The allegations of unfair competition are full and specific.

On the other hand, appellants contend that appellee never registered the word "Centennial" as a trade-mark, as required by law to give it exclusive use of such word, and that such word is merely a de-

scriptive adjective in the respective names of the parties, and as such is of common use, as a part of the name of a great many firms in Dallas in other lines of business, appellee could not have secured exclusive use of such word as a trademark; that they had never claimed they had any connection with appellee, and when asked in connection thereto have always stated that they were not so connected; that they registered in Dallas county, in conformity to the law, their name of "Centennial Room-Rental Association," in December, 1935, several months prior to appellee's assuming, as a part of its work in putting on the Centennial Exposition, the room-rental department under the name of the Centennial Housing Bureau, and that while the business is practically the same, the names are dissimilar, and no thoughtful person should confuse them; that when this suit was instituted, they had spent a great deal of money in advertising their business, under the name they adopted, and have secured contracts with house owners, under their trade-name, for the listing of their property for room-renting purposes.

Appellee excepted to the judgment rendered by the trial court and has filed cross-assignments of error, in which it is contended that this court should reverse the judgment of the lower court and enter judgment enjoining appellants from the use of the word "Centennial" in their trade-name. Appellants' complaint of the judgment is that they should not be compelled to be put to the extra expense, incident to the use of their name only in the qualified manner decreed by the court, but should have free and unrestrained use of same.

Appellants filed a general demurrer to the petition, on the ground that no cause of action was stated, and contend that, under the pleadings and evidence, judgment should have been entered in their favor, and have duly assigned error on the court's refusal to sustain the general demurrer and to enter judgment in their favor.

Appellants are engaged in a legitimate business and have the legal right, in the furtherance of such business, to canvass property owners and to solicit the listing of their rooms to be rented to visitors of the Centennial Exposition, and to charge a commission for such work. In following such business they cannot be held to be infringing upon the rights of appellee to establish and bring to a successful conclusion the Centennial Exposition.

■ As incidental to its work of putting on the Centennial Exposition, appellee has the legal right to establish its own housing bureau for the accommodation of the visitors it has invited to attend the exposition. In other words, both appellants and appellee are primarily doing needed and useful work, incident to a successful exposition. Neither party has the right to engage in unfair competition against the other. If appellants are guilty of "unfair competition," as that term is judicially defined, then appellee has the right to seek relief by applying to a court of equity for an injunction restraining such unfair competition. "Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the names, symbols, labels, or devices employed by a business rival, in order to induce purchasing public to buy his products in the belief that they are those of his rival." Queen Mfg. Co. v. Isaac Ginsberg & Bros. (C.C.A.) 25 F.(2d) 284, 285, 287.

■ The only claim of unfair competition in the instant case is in the use of the word "Centennial" by appellants in their name, "Centennial Room-Rental Association." It cannot be said that the word "Centennial" can be exclusively used by appellee as the name for its incidental business of securing rooms for the housing of visitors to the Fair. Appellee never copyrighted such name, either as a trademark or registered it as an exclusive name for its business. In fact, it could not have done so. Dixiepig Corp. v. Pig Stand Co. (Tex.Civ.App.) 31 S.W.(2d) 325.

When appellants adopted the trade-name of Centennial Room-Rental Association and established that business of soliciting the listing of the landlords in the city of Dallas for the purpose of furnishing tenants to occupy their rooms, appellee had not entered such business, for the work of the Chamber of Commerce, in registering rooms and apartments for rent for the exposition, cannot be considered as a part of appellee's work. When appellee finally determined to establish such a department as incident to its business of conducting the Centennial Exposition, appellants, for several months, had been engaged in such business, and had entered into a great many contracts

with landlords. Until March 16, 1936, when appellee established such department and adopted the name of "Centennial Housing Bureau," there was no competition in that line of business between appellants and appellee. We do not believe the doctrine of "unfair competition" can be applied in the instant case.

The trial court recognized this fact in its refusal to enjoin appellants from the use of the word "Centennial" in their trade-name, and we think the trial court was thus far correct. Appellants either had the right to the unrestricted use of the name "Centennial Room-Rental Association," or it did not have such right. The judgment of the trial court, permitting appellants to use their trade-name, but compelling them to use it only in a qualified manner, cannot be justified.

We therefore hold that appellants, by adopting their trade-name, have unlawfully infringed upon no right of appellee, and that they are entitled to continue their business under their trade-name, without being required, every time they use such name, to state that they are not connected with appellee. The judgment is therefore reversed and here rendered in favor of the appellants, dissolving the injunction, and appellee's cross-assignment is overruled.

Reversed and rendered.