Walter MILLER et al., Appellants,

v.

LONE STAR TAVERN, INC., Appellee.

No. 6082.

Court of Civil Appeals of Texas, Waco.

Dec. 6, 1979.

Opinion After Remittitur Dec. 13, 1979.

Samuel R. Jones, Dan M. Francis, Jones & Francis, Inc., Waco, for appellants.

John D. Malone, Clark & Vannatta, Waco, for appellee.

OPINION

JAMES, Justice.

This is a suit for injunction and money damages based upon allegations of unfair competition. Plaintiff-Appellee Lone Star Tavern, Inc., brought this suit against Defendants Walter Miller, Willa Mae Miller, and Jess Radle, doing business as "Lake Brazos Lone Star Steakhouse," alleging that the Defendants opened a place of business in Waco, Texas, called "Lake Brazos Lone Star Steakhouse," and by using the words, "Lone Star" in the name of Defendants' business, that Defendants have been guilty of unfair competition and have thereby deceptively misled and confused the public into believing that Plaintiff's business and Defendants' business are jointly owned or affiliated. Plaintiffs further alleged that the name "Lone Star" has acquired a secondary meaning, in that Plaintiff contends that it has built up an excellent reputation in Central Texas as a steakhouse using the name, "Lone Star."

Plaintiff further alleged that in August 1978, Defendants opened up this competing business establishment at 2601 South University Parks Drive in Waco, Texas, under the trade name, "Lake Brazos Lone Star Steakhouse," which closely resembles the name of Plaintiff's business, calculated by Defendants to mislead the public into believing Defendants' business was operated by Plaintiff or was in some way associated with Plaintiff's business, and with the intent to divert business away from Plaintiff.

Plaintiff further alleged that in addition to infringing on the Plaintiff's trade name "Lone Star," Defendants have also engaged in other unfair competition, including the use of an imitative menu, decor, waitresses' attire, table settings, and other unique characteristics found in Plaintiff's business establishment. Moreover, Plaintiff alleged that Defendants advertised that they formerly operated the Lone Star Tavern, and that the Lake Brazos Lone Star Steakhouse is in all respects the same as Lone Star Tavern. Based upon the above allegations, Plaintiff sought actual and exemplary damages and a permanent injunction restraining Defendants from using the name "Lone Star" in their business, and from engaging in any of the other unfair trade practices complained of by Plaintiff.

For convenience of identification of the parties in this opinion, Plaintiff's business will hereinafter be referred to as "Lone Star Tavern," and Defendants' business will be called "Lake Brazos Steakhouse."

Trial was had to a jury which found:

(1) Lone Star Tavern's use of the trade name, "Lone Star," in conjunction with its operation of a steakhouse has acquired a secondary meaning.

(2) The similarity of the names "Lone Star Tavern" and "Lake Brazos Lone Star Steakhouse" would be likely to confuse the public.

(3) That as a result of confusion between the names "Lone Star Tavern" and "Lake Brazos Lone Star Steakhouse," the Lone Star Tavern will suffer irreparable injury.

(3A) To date (the time of trial) Lone Star Tavern has suffered a loss of profits from Lake Brazos Steakhouse using the name, "Lone Star";

(4) in the amount of $4000.00.

(5) That Lone Star Tavern should be awarded $9,000.00 by way of exemplary damages for use of the name, "Lone Star."

(6) That Walter Miller and Willa Mae Miller are the owners of Lake Brazos Steakhouse, but Jess Radle is not one of the owners thereof.

Pursuant to and in harmony with the jury verdict, the trial court entered its judgment as follows:

(1) Defendants Walter Miller and Willa Mae Miller were permanently enjoined from the use of the name, "Lone Star," in the operation of the Lake Brazos Lone Star Steakhouse; that said Defendants were also enjoined from using the name, "Lone Star" on any signs, advertising, menus, or from making any other such display in connection with the operation of The Lake Brazos Lone Star Steakhouse.

(2) That Plaintiff recover $4000.00 actual damages against Defendants Walter Miller and Willa Mae Miller, plus 9% per annum from the date of judgment.

(3) That Plaintiff recover nothing from Defendant Jess Radle.

(4) That costs of court be taxed against Defendants Walter Miller and Willa Mae Miller.

Defendants Walter Miller and Willa Mae Miller appeal upon four points of error contending: (1) That as a matter of law Plaintiff-Appellee is not entitled to an injunction preventing the Defendant-Appellants from using the words, "Lone Star," in the name of their business; (2) there is no evidence to support the jury's answer to special issue number 4 wherein the Plaintiff was awarded $4000.00 actual damages; (3) the trial court erred in allowing Plaintiff to introduce hearsay evidence from the *Texas Monthly Magazine* ; and (4) the injunction provisions of the judgment are ambiguous and allow speculation as to what geographical area such injunction extends to.

We revert to Defendant-Appellants' first point, wherein they contend that as a matter of law, Plaintiff-Appellee is not entitled to an injunction preventing the Defendants from using the words, "Lone Star," in the name of their business. We overrule this contention.

Lone Star Tavern, Inc. is a Texas Corporation, having been incorporated since 1977. Its predecessor, "Lone Star Tavern," was opened in 1959, and began serving steaks in 1963. Lone Star Tavern is now considered a steakhouse, and derives 90% of its income from the sale of steaks. There are two signs in front of the Lone Star Tavern which read, "Lone Star Steaks." Testimony at the trial showed that many people refer to Plaintiff's business as "Lone Star," "Lone Star Steaks," "Lone Star Steakhouse," as well as "Lone Star Tavern."

Ida Buck, the president of Lone Star Tavern, Inc., testified that she paid $52,000.00 for the goodwill of Lone Star Tavern when she purchased the business; that the reputation of her business for excellent steaks is well known in Central Texas and beyond; that one-third of her customers come from out-of-town (from outside of Waco, Texas), and that she has been interviewed by *Texas Monthly Magazine* and by a Houston television station with reference to her fine steaks.

In August 1978, Defendants Walter Miller and Willa Mae Miller began operating a business at 2601 South University Parks Drive in the City of Waco, Texas, calling it "The Lake Brazos Lone Star Steakhouse," which business was formerly known as "The Lake Brazos Inn." Evidence showed that Defendant Walter Miller had worked for and operated the Lone Star Tavern prior to his operating the Lake Brazos Lone Star Steakhouse; that in setting up the Lake Brazos Steakhouse, Defendant Miller used a similar menu, similar table settings, and signs in front of said business identifying it as "Lone Star Steakhouse." Several witnesses testified to the effect that there was confusion in the minds of not only said witnesses themselves, but also in the minds of the public generally, because of the simi-larity of Plaintiff's and Defendants' businesses in the respects hereinabove pointed out.

■ In order to be entitled to injunctive relief, Plaintiff-Appellee Lone Star Tavern had the burden of establishing three elements in order to sustain such cause of action, as follows:

(1) That Plaintiff's extensive use of the name "Lone Star" had acquired a secondary meaning so that such name identified Plaintiff's place of business as a steakhouse;

(2) That the similarity of the name of Defendants' place of business by Defendants' use of the name "Lone Star" as part of the name of such business would be likely to confuse the public; and

(3) That as a result of such confusion, Plaintiff would suffer irreparable harm. *Dixiepig Corp. v. Pig Stand Co.* (Tex.Civ. App.Dallas 1930) 31 S.W.2d 325, cert. denied, 283 U.S. 831, 51 S.Ct. 364, 75 L.Ed. 1443; *Harrelson v. Wright* (Tex.Civ.App. Eastland 1960) 339 S.W.2d 712, writ refused; *KIKK, Inc. v. Montgomery County Broadcasting, Inc.* (Tex.Civ.App.Beaumont 1974) 516 S.W.2d 494, no writ; 55 Tex. Jur.2d, "Trademarks, Trade Names, Etc.," par. 52, p. 687.

It is well-settled that each of the above three elements ordinarily present questions of fact. *Plaza Co. v. White* (Tex.Civ. App.San Antonio 1942) 160 S.W.2d 312, writ refused; *Suniland Furniture Co. v. Sunny-land Wholesale Furniture Co.* (Tex.Civ.App. Dallas 1950) 235 S.W.2d 674, writ refused; *Dilworth v. Hake* (Tex.Civ.App.Waco 1933) 64 S.W.2d 829, writ dismissed; *Rogers v. Broughton* (Tex.Civ.App.Austin 1952) 250 S.W.2d 606, NRE; *Bull and Bear Club, Inc. v. San Antonio Bull and Bear Club* (Tex. Civ.App.San Antonio 1968) 424 S.W.2d 489, no writ. Also see *J. C. Penney Co. v. Walker* (Tex.Civ.App.Waco 1965) 395 S.W.2d 76, NRE.

■ In the case at bar, the jury found (1) that Lone Star Tavern's use of the trade name, "Lone Star," in conjunction with the operation of its steakhouse had acquired a secondary meaning; (2) the similarity of

the names, "Lone Star Tavern" and "Lake Brazos Lone Star Steakhouse" would be likely to confuse the public; and (3) as a result of such confusion, Plaintiff Lone Star Tavern will suffer irreparable injury. Therefore, in this state of the record the trial court was justified in granting the injunctive relief that he did. Appellants' first point of error is overruled.

Appellants' point number 2 complains of the trial court's award of $4000.00 in actual damages. In response to Special Issue No. 4, "What sum of money do you find from a preponderance of the evidence would fairly and reasonably compensate the Lone Star Tavern, Inc. for its lost profits from the occurrence in question?", the jury responded "$4000.00." Appellants filed with the trial court a Motion for Judgment Non Obstante Veredicto claiming that there was no evidence to support this finding. Appellants reiterate this contention before this Court.

■ We have carefully reviewed the statement of facts in this case and find that all evidence relevant to the amount of damage suffered can be summarized as follows:

1) An advertising agent hired by Mrs. Buck testified that he had provided advertisements designed to combat the "confusion" created by the opening of the Lake Brazos Steakhouse and that his services in this regard were worth $1500.00.

2) Mrs. Buck testified concerning the gross receipts of Lone Star Tavern for selected months during 1977 and 1978, the amounts being:

|  | 1977 | 1978 |
| --- | --- | --- |
| May | * | @$45,000.00 |
| June | * | @$47,000.00 |
| July | $38,669.00 | $50,582.00 |
| August | * | @$52,000.00 |
| September | * | @$47,000.00 |
| October | $43,387.00 | $45,496.00 |

* no figures were offered

On cross-examination, Mrs. Buck testified that her net profit was about 5% of the gross receipts. She further testified that,

based on the inquiries she had had regarding the Lake Brazos Steakhouse, she estimated that she had lost 4 or 5 customers a day from the time of Lake Brazos's opening until the time of trial. She stated that the average customer spent about $5.00 at the Lone Star.

■ We are of the opinion that there is some evidence indicative of "lost profits" but there is no evidence to support an award in the amount of $4000.00. A detailed analysis of this evidence indicates that it would only support an award of not more than $2000.00. The Plaintiff-Appellee was entitled to recover lost "profits"—not gross receipts. "Profits are the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them." Hall v. Brown (Tex.Civ. App.Waco1966) 398 S.W.2d 404, 408, no writ; Vicki Industries, Inc. v. Hupp Systems, Inc. (Tex.Civ.App.Waco 1975) 521 S.W.2d 733, 736, no writ. To the extent that increased costs effectively decrease profits, the advertising costs of $1500.00 hereinabove pointed out are evidence of lost profits. However, insofar as profits lost as a result of reduced sales, the evidence does not show an additional $2500.00 loss. Lake Brazos opened for business on August 7, 1978 and trial was had during early December of 1978. Thus, losses could only be based on reduced sales during August, September, October, and November of 1978. By Mrs. Buck's own testimony, August of 1978 was "a real good month"; gross receipts increased substantially over the receipts of July. Receipts of September and October were less than those of July and August, but there was no evidence introduced concerning the gross receipts of November. Thus, if we use the August figure, August having been "a real good month," as indicative of gross receipts that should have been made during September and October, we would find that gross receipts were down a total of $12,000.00 for those two months. Mrs. Buck indicated that 5% of gross was net profit; thus 5% of $12,000.00 would result in lost "profits" of an additional $600.00 as a result of reduced sales. One could alternatively figure the

amount lost as a result of lost sales by using the testimony of Mrs. Buck that, in her opinion, she had lost 4 or 5 customers per day from the time Lake Brazos opened until trial and that the average customer spent $5.00. Appellee, in its brief, says that Lone Star Tavern was open 127 days during that time. Thus, $5.00 × 5 customers × 127 days equals a loss of gross receipts totalling $3175.00. Loss of the 5% profit on this amount would come to only $158.75. In her testimony Mrs. Buck also compared the increases in gross receipts for July of 1978 over July of 1977 relative to the increases in receipts during October of 1978 versus October of 1977. The figures indicated about a 31% increase in July of 1978 (the month before Lake Brazos opened) over July of the previous year and only about a 5% increase in October of 1978 over October of the previous year. Only these two months' comparisons were offered and there was no testimony that these figures were representative of the time period preceding and following the opening of Lake Brazos. Furthermore, Mrs. Buck did not begin operating the Lone Star Tavern until April of 1978 and the 1977 figures are irrelevant insofar as the expected profits of the restaurant under Mrs. Buck's sole management and are thus not evidence of probative value in this case. Even if these comparisons were probative, they could only show approximately a $13,000.00 deficit in gross receipts, 5% of which would amount to a $650.00 loss of profits from sales.

We recognize that Texas courts have said that "In their nature, profits are more or less conjectural or speculative, but the injured party must not be deprived of his remedy because of difficulties lying in the way of proving his damages." *Grand Prairie Gravel Co. v. Joe B. Wills Co.* (Tex.Civ. App.Amarillo 1916) 188 S.W. 680, 686, writ refused. Further, "It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness." *Southwest Battery Corporation v. Owen* (Tex.1938) 131 Tex. 423, 115 S.W.2d 1097, 1098. Nonetheless, the natural uncertainty of lost profits does not permit awards clearly beyond the scope of rather specific evidence. Under the facts of this case it cannot be said, as a matter of law, that the Lone Star Tavern was not entitled to *any* recovery for the loss of their profits. However, we do find that the damages awarded are excessive in an amount of $2000.00.

■ Appellants' point number 3 asserts that evidence from the *Texas Monthly Magazine* was introduced by the Plaintiff and that such evidence was prejudicial hearsay which probably caused the rendition of an improper verdict in this case. Appellants' brief does not make any specific references to the statement of facts and thus we are unable to determine the exact rulings complained of. However, we have carefully read the entire statement of facts and have determined that: (1) Plaintiff's attorney did have a copy of a *Texas Monthly Magazine* in the courtroom and he apparently "exhibited" this magazine before the jury on two occasions, (2) The magazine was never offered into evidence nor were any excerpts read or recited to the jury, (3) Mrs. Buck recited information that she had given a reporter of the magazine in an interview preceding an article dealing with the Lone Star Tavern, and (4) Mr. Miller was interrogated concerning his knowledge of the article and he said that he had no knowledge of the article or of the magazine. It could have been error to allow the magazine to be "exhibited" in the courtroom; but, considering the record as a whole, we hold that such error, if any, was harmless. Rule 434, Texas Rules of Civil Procedure.

■ Appellants' point number 4 contends that the injunction is fatally defective in failing to state a specific geographical area to which it applies. The injunction under attack reads as follows:

"It is therefore ordered, adjudged and decreed: (1) That Defendants, Walter Miller and Willa Mae Miller, their employees, servants and agents, be and they are hereby perpetually enjoined from and that they shall desist from the use of the

name 'Lone Star' in the operation of the Lake Brazos Lone Star Steakhouse. The name 'Lone Star' shall not be used or appear on any signs, advertising, menus or in any way displayed in conjunction with the operation of the Lake Brazos Lone Star Steakhouse."

The injunction specifically refers to "*the* Lake Brazos Lone Star Steakhouse" (emphasis added). There was no evidence that the Lake Brazos Lone Star Steakhouse is operating at any place other than at 2601 South University Parks Drive in Waco, Texas, and, in our opinion, this injunction quite specifically refers to this one operation and one geographical location. Appellants' point number 4 is therefore overruled.

We are of the opinion that the jury's answer to Special Issue No. 4 in the amount of $4000.00 and the judgment based thereupon is excessive in the amount of $2000.00 for the reasons hereinabove stated, and that this cause should be reversed and remanded for this reason only. Therefore, if the Appellee files a remittitur within ten (10) days from the date of this judgment in the amount of $2000.00, then we will reform and affirm the trial court's judgment in accordance therewith; if not filed as indicated, then the judgment shall be reversed and remanded for retrial on the merits. Rule 440, Texas Rules of Civil Procedure.

Costs of this appeal are assessed one-half to Appellants and one-half to Appellee.

REVERSED AND REMANDED WITH SUGGESTION OF REMITTITUR.

### OPINION AFTER REMITTITUR

It appearing to the Court that Appellee has filed a Remittitur in the amount of $2000.00 in accordance with the suggestion set out in our original opinion of December 6, 1979:

We therefore reform the trial court's judgment by deleting therefrom the amount of $2000.00, and as reformed, we affirm said judgment.

REFORMED AND AFFIRMED.