**LINE ENTERPRISES, INC., et al., Appellants,**

v.

**HOOKS & MATTESON ENTERPRISE, INC., d/b/a Adam's Rib, et al., Appellees.**

No. 07–81–0185–CV.

Court of Appeals of Texas, Amarillo.

Aug. 19, 1983.

Rehearing Denied Sept. 12, 1983.

Kirt H. Kiester, Brandes & Kiester, Austin, for appellants.

Oscar P. Fields and Daniel W. Burrows, Stokes & Fields, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Appellants, Line Enterprises, Inc., The County Line, Inc., The State Line, Inc., The Roadhouse, Inc., and Streeterville Food Service, Inc., appeal from a take-nothing judgment rendered in their actions for injunctive relief against and to recover damages from appellees Hooks & Matteson Enterprise, Inc., d/b/a Adam's Rib, Gabriel Marcus Vasquez, and Hooks & Matteson Investments, on their unfair competition claim. On appeal, appellants complain, among other things, that the charge submitted by the court imposed a greater burden of proof on them than is required to prove an unfair competition claim. We agree. Reversed and remanded.

Line Enterprises, Inc., a management corporation, was incorporated in 1977 to help manage the operations of The County Line and The State Line corporations which, respectively, operate The County Line Restaurant in Austin and The State Line Restaurant in El Paso, both specializing in the preparation of barbeque in plush surroundings. Later, Line Enterprises, Inc. established The Roadhouse, Inc. for the purpose of selling franchises of its restaurant business. In January of 1979, The Roadhouse, Inc. entered into a franchise agreement with Streeterville Food Service, Inc. to set up The Roadhouse Restaurant in Lubbock. At all relevant times prior to January 1979, appellants had not registered any marks with the State of Texas and were never in direct competition with appellees.

Appellee Hooks & Matteson Enterprise, Inc. was involved in several business ventures, among which was included the restaurant business. On October 23, 1978, appellee opened the Adam's Rib Restaurant in Amarillo, specializing in the serving of bar-beque. Gabriel Vasquez, who worked in The County Line Restaurant, was employed to manage the kitchen. Several people connected with Adam's Rib became familiar with the operation of the restaurants associated with appellants and attempted to duplicate and incorporate some of the same techniques, etc., in the operation of Adam's Rib.

Shortly after the opening of Adam's Rib, appellants learned that its operations were very similar to appellants' businesses. Specifically, appellants gained information that appellees intended to duplicate the concepts, menus and recipes of the restaurants owned and operated by appellants. Believing that those acts would mislead the public into thinking appellees' restaurant operation was operated and owned by appellants, and further that such acts would prevent appellant Streeterville Food Service, Inc. from entering the Amarillo area, appellants initiated their unfair competition action.

Generally, appellants alleged that appellees entered into unfair competition by wrongfully appropriating and using recipes, menus, slogans, logos and other confidential information of appellants, without their knowledge or consent, in opening and operating Adam's Rib, thereby creating the deception that appellees' restaurant was operated by appellants and causing appellants to sustain the loss of a market area and profits. Appellants sought to permanently enjoin appellees from using, and to recover monetary damages for their use of, the appropriated matters. Appellees answered with a general denial.

Trial was to a jury, which answered all of the submitted special issues in favor of appellees and against appellants, except for special issue no. 3. In response to that issue, the jury found that appellees Hooks & Matteson Investments and/or Hooks & Matteson Enterprise, Inc., misappropriated the recipes, barbeque techniques and menus of The County Line, Inc., The State Line, Inc. and/or Line Enterprises, Inc., and used them in the operation of Adam's Rib. However, in answering special issue no. 4,

the jury failed to find that the misappropriation was a proximate cause of any monetary loss to Line Enterprises, Inc. Based upon the jury's verdict, the trial court rendered a take-nothing judgment from which appellants have appealed with eleven points of error.

Appellants requested, but the court refused, the submission of a special issue and accompanying instruction reading as follows:

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that H. & M. Ent. Inc. and/or H. & M. Investments were passing off their goods and services at Adam's Rib Rest. as those of the County Line Restaurant, the State Line Restaurant and/or the Road House Restaurant and thereby causing a likelihood of confusion?
Ans.: We do or We do not
Ans.: _____

In connection with this Special Issue you are instructed that "passing off" products as the products of another means that a customer of ordinary intelligence and perception in the exercise of ordinary care would be confused as to the origin of such products.

Instead, the court submitted, over appellants' objections, this issue and instruction:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Hooks & Matteson Investments and/or Hooks & Matteson Enterprises, Inc., d/b/a Adam's Rib Restaurant engaged in unfair competition with the restaurants of Line Enterprises, Inc.?

*Instruction*—In order to find unfair competition you must believe and find from the evidence that the Adam's Rib Restaurant is "deceptively similar" to the State Line and/or County Line Restaurants, that Adam's Rib is "passing off" their products as the products of the State Line and/or County Line Restaurants and that the Adam's Restaurant is

employing marketing devices and practices of the State Line and/or County Line Restaurants for the purpose of inducing customers to buy Adam's Rib food in the false belief that they are buying the food of Line Enterprises Inc.

(a) "Deceptively similar" means that a person of ordinary intelligence would confuse the Adam's Rib Restaurant operation with the Line Enterprise Inc., restaurant operations so that in choosing to eat at the Adam's Rib Restaurant such an ordinary person would believe that he had purchased and received the food and services of the Line Enterprises Inc., restaurants.

(b) "Passing off" products as the products of another means that a customer of ordinary intelligence and perception in the exercise of such reasonable care and observation as customers may be expected to exercise would probably believe that foods served at the Adam's Rib Restaurant were the foods of the Line Enterprises, Inc., restaurant operations.

Considering the above instructions answer the foregoing Special Issue "We do" or "We do not."
Answer: _____

The jury answered, "We do not."

Nine of appellants' eleven points of error are utilized in their attack on the court's refusal to submit their requested special issue and instruction together with their requested, but refused, issues on damages related thereto, and on the court's submission of special issue no. 1 with its accompanying instructions. These points will be addressed topically rather than seriatim.

▪ At the outset, we observe that the court cannot be faulted in the formulation of the special issue submitted. The court is required to submit the controlling issues made by the written pleadings and the evidence, Rules 277 and 279;[1] yet, Rule 277 gives the court discretion whether to submit issues as to each element of a cause or to submit issues broadly, *Members Mutual Ins.*

1. All references to rules are to the Texas Rules of Civil Procedure.

Co. v. Muckelroy, 523 S.W.2d 77, 81–83 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.), even to the extent of a global submission. Pope and Lowerre, *The State of the Special Verdict—1979*, 11 St. Mary's L.J. 1, 9 (1979). The discretion exercised will not be overturned unless there is a clear showing of abuse. *DeAnda v. Home Ins. Co.*, 618 S.W.2d 529, 534 (Tex.1980).

◼ In addition to alleging and adducing evidence bearing on the question whether appellees were passing off their goods and services as appellants', the traditional tort of unfair competition, *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 541 (W.D.Tex.1980), appellants specifically pleaded and presented evidence raising the question of deception. Appellants' requested issue did not embrace the question of deception; the court's submitted issue did. There is, of course, no abuse of discretion in the submission of a broad issue which embodies the controlling issues and includes a narrower issue requested to be submitted.

◼ Notwithstanding that the submission of the special issue is not faulted, the explanatory instructions submitted with it are required to be those that "shall be proper to enable the jury to render a verdict." Rule 277. To be proper, an instruction must be correct, *Sanders v. Davila*, 593 S.W.2d 127, 129 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), since an instruction that misstates the law cannot be expected to produce a correct verdict. Pope and Lowerre, *The State of the Special Verdict—1979*, 11 St. Mary's L.J. 1, 38 (1979).

Appellants contend here, by their eighth, ninth and tenth points of error, that the court's instruction placed a greater burden on them than the law requires. We agree and sustain those points, but we overrule all other points of error.

◼ By conjoining the three specified elements and compelling an affirmative finding on each of them for a finding of unfair competition, the court's instruction required, by the language employed, the jury to find that Adam's Rib's operators, by employing the marketing devices and practices of appellants' restaurants, intended to actually deceive its customers into believing that the food of Adam's Rib was the food of Line Enterprises, Inc. The law is not so stringent.

◼ The law does not require an intent to deceive in order to prevail on an unfair competition claim. *National Bank of Commerce v. Shaklee Corp., supra*, at 542; *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex.Civ.App.—Dallas 1943, no writ). Neither does the law require that the customers were actually deceived; it is sufficient to show that deception will naturally and probably result from the operation, *Harrelson v. Wright*, 339 S.W.2d 712, 715 (Tex.Civ. App.—Eastland 1960, writ ref'd); *McCarley v. Welch, supra*, or that the public is likely to be deceived or confused.[2] *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1191 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

◼ By incorrectly describing the substantive law as requiring findings of both an intent to deceive and an actual deception before the jury could find unfair competition, the court's instruction placed a greater burden on appellants than the law requires. An instruction that imposes a greater burden than the law requires is harmful because it reasonably could and probably did cause the rendition of an improper judgment. *Dutton v. Southern Pacific Transp.*, 576 S.W.2d 782, 786 (Tex. 1978). The improper submission calls for a reversal of the judgment and a remand of the cause so that appellants' right to recover may be determined under a submission of the correct theory of liability. *Waldo v. Galveston H. & S.A. Ry. Co.*, 50 S.W.2d 274, 277–78 (Tex.Comm'n App. 1932, holdings approved).

**2.** In discharging the burden of proof, either actual or probable deception must be shown, *Harrelson v. Wright*, 339 S.W.2d 712, 715 (Tex. Civ.App.—Eastland 1960, writ ref'd); a mere possibility of deception will not suffice. *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex. Civ.App.—Dallas 1943, no writ).

Appellants have advanced two other contentions of reversible error. In the light of the reversal and remand, these contentions will be addressed only briefly.

■■■■ We cannot agree the appellate record supports appellants' contention that the court reversibly erred in overruling their motion in limine and admitting evidence sought to be excluded by the motion. The overruling of a motion in limine, even if erroneous, is never reversible error. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963). Moreover, a proper objection made at the time the evidence is offered is necessary to preserve the right to complain on appeal of the erroneous admission of evidence. *Id.* Although appellants did object when the admitted evidence was offered, the objection to the evidence they present on appeal was not among those voiced to the trial court and, therefore, it will not be considered on appeal. 1 R. Ray, *Texas Law of Evidence* § 26 (Texas Practice 3d ed. 1980).

■■■■ Nor can we agree this record supports appellants' further contention that the court erred in not granting their request for a permanent injunction to prevent appellees from using the items found by the jury, in answering special issue no. 3, to have been misappropriated. To be entitled to a permanent injunction, one must show that he will suffer irreparable harm, usually a question of fact. *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341, 344 (Tex.Civ. App.—Waco 1979, no writ), and authorities there cited. In this cause, not only was the question of irreparable harm not submitted for determination, but the jury, by its answer to special issue no. 4, failed to find that the misappropriation was a proximate cause of any monetary loss, an answer unchallenged on appeal. Beyond that, appellants' contention is premature, for a permanent injunction is only proper upon the entry of a final decree, *Ex parte Zuccaro*, 106 Tex. 197, 163 S.W. 579, 580 (1914); and, by our decision on appeal, a final judgment has not been rendered in this cause.

The judgment is reversed and the cause is remanded.