Dervin L. HUDGENS, Wanda J. Hudgens, and Goen-Hudgens Funeral Home, Inc., Appellants,

v.

G. Carroll GOEN and Esther L. Goen, Appellees.

No. 2–83–148–CV.

Court of Appeals of Texas, Fort Worth.

July 12, 1984.

W.A. Pritchard, Dallas, for appellants.

Philips, White, Davidge, Griffin, Shelton, Eames, Wood & Duncan, David C. White and Miller Davidge, Denton, for appellees.

Before FENDER, C.J., and HUGHES and JOE SPURLOCK, II, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This appeal is from a judgment granted G. Carroll Goen and wife for permanent injunctive relief against Dervin L. Hudgens and wife and Goen-Hudgens Funeral Home, Inc. to prevent the continued use of the unregistered "Goen" trade name. The Hudgens and their corporation, by cross-complaint, sought a declaratory judgment to receive proper credit for certain moneys paid to Mr. Goen and wife. The parties will be referred to as "Goen" and "Hudgens".

After the trial before a jury, Goen moved to disregard the jury's answer to Special Issue No. 8.[1] Hudgens moved, without success, for the court to disregard the jury's answers to Special Issues Nos. 2, 3, and 4[2] and to disregard the verdict as a whole because, as a matter of law, the Goens had abandoned their business name.

Judgment was entered, notwithstanding the eighth special issue finding, command-

---

1. SPECIAL ISSUE NO. 8

If you have answered the foregoing Special Issue No. 3 "Yes", then answer the following Special Issue; otherwise, do not answer the same:

If you have found that an ordinarily prudent person would be confused by the name "Goen-Hudgens Funeral Home, Inc.", do you find from a preponderance of the evidence that as a result of such confusion, Mr. and Mrs. G. Carroll Goen would suffer irreparable harm?
Answer "Yes" or "No".
Answer: No.

2. SPECIAL ISSUE NUMBER TWO Do you find from a preponderance of the evidence that Goen Funeral Home is the tradename of G. Carroll Goen, as defined herein.
Answer yes or no.
ANSWER: Yes
INSTRUCTIONS You are instructed that the term "tradename" is defined as the name by which the goodwill or reputation of a particular business has come to be know by the public,

and which identifies the service, reputation and skill of the provider of said service.

SPECIAL ISSUE NUMBER THREE Do you find from a preponderance of the evidence that Hudgens' corporate name, Goen-Hudgens Funeral Home, Inc., is so similar to Plaintiffs' that the public may be expected to deal mistakenly with one when intending to deal with the other.
Answer yes or no.
ANSWER: Yes
SPECIAL ISSUE NUMBER FOUR Do you find from a preponderance of the evidence that the tradename of "Goen" or "Goen Funeral Home" has been abandoned.
Answer yes or no.
ANSWER: No
INSTRUCTIONS You are instructed that the term "abandonment" for the purpose of this issue means the actual nonuse of the tradename coupled with the intention of the owner to abandon it.

ing Hudgens to desist and refrain from using the name "Goen" in connection with their business after October 1, 1983. The judgment recited "the finding of the jury on Special Issue Number 8 is immaterial and harmless since said special issue is a question of law and fact." The trial court also granted a declaratory judgment regarding the proper application of moneys paid to the Goens. Appeal is taken by Hudgens only from that portion of the judgment granting the permanent injunction.

We reverse and reform the judgment to dissolve the injunction. A brief review of the facts is necessary to consider the Hudgens' contentions in their ten points of error.

The Goens operated a funeral home in Denton, Texas under the name "Goen Funeral Home" from 1941 until 1977, at which time they sold the business to a Mr. and Mrs. Bradley. The Bradleys operated the business at the same location under the same name until July of 1980, at which time the Hudgens, with the consent of Goen, purchased the business, including the real estate.

The Goens' conveyance of the business to the Bradleys was accomplished by a written sales agreement, and at closing by delivery of warranty deed upon the consideration of a cash down payment and execution of an installment note secured by deed of trust and a security agreement. There was also executed on January 1, 1978, a "Memoranda Of Supplemental Agreement". In that transaction, the sole reference to the use of the name "Goen" is found in the "Sales Agreement" executed on November 3, 1977, wherein it was agreed that the Bradleys had the right to use such name in their trade name "for a period not to exceed five years".

The Hudgens' acquisition from Bradley was by way of a written "Assumption Agreement" in which they assumed all of the obligations of the Bradley note, deed of trust, security agreement, and Memoranda of Supplemental Agreement. Goen consented in writing to such sale and assumption of the note. None of the instruments used in the Hudgens purchase referred to the use of the Goens' name.

After acquiring the business, the Hudgens formed a corporation known as "Goen-Hudgens Funeral Home, Inc." and have operated the business under the corporate name and Goen Funeral Home until the present controversy. On several occasions after December 31, 1982, five years from the date of their sale to the Bradleys, the Goens demanded the Hudgens cease using their name, without result. Suit was then instituted on March 31, 1983, which exclusively prayed for injunctive relief.

Mr. Hudgens testified that he was aware that Goen would have to approve his purchase from Bradley. A meeting in the Goens' home was arranged to discuss the matter. The meeting took place on June 27, 1980, prior to the closing of the sale. Mr. Hudgens testified that at the meeting, the Goens asked him not to change the name of the funeral home (from Goens) and not to run advertisements announcing a change in management. Mr. Hudgens further testified that he was not aware of the five-year limitation previously agreed to by the Goens and the Bradleys. He did not ask about any limitation on the use of the name. Later, in addition to Goen-Hudgens Funeral Home, Inc., he also used the name "Goen Funeral Home" in advertising until he received a letter from the Goens' attorney telling him to stop. Thereafter, he used only the corporate name, Goen-Hudgens Funeral Home, Inc.

Bradley testified that he never told Hudgens about the limitation on the use of the Goen name. Goen testified that he did not consent to the use of his name by Hudgens beyond the five year period, but, he never told Hudgens about the time limitations. He did not deny Hudgens' testimony about the conversation in which he, Goen, asked Hudgens not to change the name. When asked why he didn't want Hudgens using his name in the business, his only reply was:

When you don't have control, where your name is—I want my name off,

things are coming up where people are asking me, 'What's your name doing on that?' I want to get it off.

Mrs. Goen testified that she explained to Mrs. Hudgens "about the limitation on the name," when she talked with her "a few days after the sale." Mrs. Goens did not deny Hudgens' testimony that the Goens asked him not to change the business name.

The case was apparently pled, tried and submitted to the jury under a theory very similar to the one involved in *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341 (Tex.Civ.App.—Waco 1979, no writ). *Miller* was an unfair competition case involving injunctive relief in circumstances where there were two competing businesses using similar names. The court's opinion set out three requirements of a cause of action in such cases. Briefly stated, the three requirements were that: 1) plaintiff's use of its trade name had acquired a secondary meaning so that such name was particularly associated with Plaintiff's place of business; 2) that the similarity of the name used by the defendant's place of business would be likely to confuse the public; and 3) that as a result of such confusion, plaintiff would suffer irreparable harm. *Miller, supra* at 344. The court in *Miller* then cites various authorities which establish these three elements. A review of these authorities and all other applicable case law concerning a cause of action based on unfair competition leads this court to the conclusion that only two elements are required to sustain a cause of action based on unfair competition thereby entitling the plaintiff to injunctive relief.

■■■ The two elements which must be established in order to sustain such a cause of action are: 1) plaintiff's use of its trade name has acquired a secondary meaning; and 2) the similarity of the name used by the defendant's place of business would be likely to confuse the public. *Harrelson v. Wright*, 339 S.W.2d 712, 714 (Tex.Civ.App.—Eastland 1960, writ ref'd); *Plaza Co. v. White*, 160 S.W.2d 312, 313–14 (Tex.Civ. App.—San Antonio 1942, writ ref'd); and

*Dixiepig Corporation v. Pig Stand Co.*, 31 S.W.2d 325, 326–27 (Tex.Civ.App.—Dallas 1930) *cert. denied* 283 U.S. 831, 51 S.Ct. 364, 75 L.Ed. 1443 (1931). See *Foam Rubber Products, Inc. v. Jimenez*, 457 S.W.2d 276 (Tex.1970) (wherein the Supreme Court of Texas cites with approval to the holding in *Harrelson*). The third element found in *Miller*, of irreparable harm, is not required for a plaintiff to be entitled to injunctive relief when the cause of action is based on unfair competition.

■■■ As stated by the court in *Plaza Co.*, " 'the gist of' " a cause of action based on unfair competition " 'is not the harmless use of the particular words or symbols, but the appropriation of a competitor's business to his injury.' " *Plaza Co., supra* at 314. The Supreme Court of Texas in *Hanover Manufacturing Company, Inc. v. Ed Hanover Trailers, Inc.*, 434 S.W.2d 109, 111 (Tex.1968) stated:

> The common law has long protected the owner of a trademark having a 'secondary meaning', which identifies the product in the mind of the public as that of a particular producer. This protection stems from the basic idea that a trademark or trade name represents the goodwill that has been built up by the energy, time, and money of the user of the mark.

In such a case, the harm which an injunction is intended to prevent is the actual appropriation of the plaintiff's customers through the use of a trade name exactly like or similar to the plaintiff's trade name.

■■■ The deceptive and harmful appropriation of a competitor's customers is the evil which the injunction would prohibit. The granting of injunctive relief depends upon the existence of competition between the parties. No business competition exists between the parties to the present action. Not only is there a total lack of competition, but one of the parties is not presently engaged in a business activity and does not intend to engage in future business activities. The Goens have been in retirement since 1977, when they sold the business to the Bradleys. At the time of that sale, Mr. Goen was 71 years old. It does not appear

that the Goens have any plans to engage in business in the future and there is no evidence that they wish to transfer their name to any other person for business use. This suit cannot be properly classified as a cause of action for unfair competition. We must determine what additional elements of proof are required where the parties are not business competitors.

The court in *Burge v. Dallas Retail Merchants Assn.*, 257 S.W.2d 733, 735 (Tex.Civ. App.—Dallas 1953, no writ), stated that "a person or association may, under some circumstances, be entitled to injunctive relief against a later user of the same or a similar trade name although the parties are not in competing lines of business." The court then went on to find that each case must be judged by its own circumstances and a controlling factor in such cases is "[w]hether a fraud was perpetrated and whether the complainant suffered or will probably suffer harm." *Burge, supra* at 735–736. Injunctive relief is therefore available to the complainant if harm can be shown because "where it is shown that there has been, or will be harm, equity will not withhold its aid merely because the victim of the fraud happens not to be in a competing line of business with the wrongdoer." *Burge, supra* at 736. It is necessary that fraud occur and that harm results.

■ The court in *Aero Services, Inc. v. Aero Service Corporation*, 538 S.W.2d 226 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ), found that the parties were not in competition with each other. The court then rendered a judgment denying a temporary injunction because the appellee had failed to show that they had suffered any harm. *Aero Services, Inc., supra* at 227. Where the parties are not in competition, the possibility of harm from the appropriation of another's business or customers is nonexistent. Where no competition exists between the parties, the complaining party must prove that he has suffered or will suffer some other harm from the use, by the defendant, of the same or similar trade name. He must also prove such use was fraudulent. The third element of the test

announced in *Miller*, therefore, is applicable where no competition exists between the parties.

In this case, we find the three *Miller* requirements are covered by: Special Issue No. 1 inquiring if Goen Funeral Home has a "secondary meaning"; Special Issue No. 3 inquiring if "Hudgens' corporate name, Goen-Hudgens Funeral Home, Inc., is so similar to Plaintiffs' that the public may be expected to deal mistakenly with one when intending to deal with the other"; and Special Issue No. 8 asking, "if you have found that an ordinarily prudent person would be confused by the name 'Goen-Hudgens Funeral Home, Inc.', do you find from a preponderance of the evidence that as a result of such confusion, Mr. and Mrs. G. Carroll Goen would suffer irreparable harm?" As we stated previously, Special Issue No. 8 was answered in the negative, and we consider the failure of the jury to find irreparable harm as being fatal to the asserted cause of action for injunctive relief. We note there was no jury issue requesting a finding whether or not the use of the name was a fraud perpetrated on Goen.

■ The burden was on the appellees, plaintiffs below, to show that they would suffer irreparable harm from the continued use of the "Goen" name in appellant's business, and whether or not a fraud had been committed. A review of the evidence presented at trial reveals that there is a total absence of evidence of harm suffered by the appellees. In effect, there is no evidence of harm either existing or potential. The jury's answer to Special Issue No. 8 was, therefore, justified in light of such absence of evidence.

■ We find that the trial court was in error in disregarding the jury's answer to Special Issue No. 8. The Supreme Court of Texas in *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966), stated that "[a] jury's answer to a special issue may be disregarded only when it has no support in the evidence or when the issue is immaterial." Because there was no evidence on the issue of harm, such special issue may well have been a question of law

and fact as stated by the trial court. The jury's finding on Special Issue No. 8, was not however, immaterial and harmless and should not have been disregarded. The Supreme Court in *C. & R. Transport, Inc.,* *supra* at 194 recites that "if a finding upon the issue claimed to be immaterial could if made, or does as made, create a fatal conflict with other findings *or otherwise affect the legal significance of the verdict* and hence the judgment to be entered, *the issue is material* and must not be ignored". 4 R. McDonald, Texas Civil Practice, § 17.31 (Supp.1984). We find that the issue of harm was material to the plaintiffs', appellees', cause of action and the jury's negative finding to Special Issue No. 8 prevents the rendering of injunctive relief to the appellees. We also find no evidence of fraud in the record, and cannot deem this finding to support the judgment.

In their first, second and third points of error, the appellants contend that the trial court erred in not entering judgment for them based on the jury's verdict and a failure to find that the appellees would suffer irreparable harm if the injunction was not granted and erred in disregarding Special Issue No. 8 and the jury's finding thereto. We sustain the appellant's points of error one, two and three. We do not, therefore, find it necessary to address appellants' points of error four through ten as points one, two and three are dispositive of the case. We find that there are no further matters of fact to be ascertained and that there is no uncertainty as to the matter to be decreed. TEX.R.CIV.P. 434. We reverse and reform that portion of the judgment of the trial court which granted the injunction and order that the injunction be dissolved. As reformed, the judgment is affirmed.