Associated Telephone Directory Publishers, Inc. v. Five D's Publishi



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-529-CV





ASSOCIATED TELEPHONE DIRECTORY PUBLISHERS, INC. AND MAURICE LEWIS,



 APPELLANTS


vs.





FIVE D'S PUBLISHING COMPANY, INC.,



 APPELLEE



 




FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT



NO. C89-108A, HONORABLE RALPH W. CATON, JUDGE PRESIDING



 




 Associated Telephone Directory Publishers, Inc. and Maurice Lewis, president
of ATD (collectively "ATD"), appeal from a district-court judgment awarding damages to
Five D's Publishing Co., Inc. ("Five D's"), for unfair competition and for conversion of
telephone directories that were the subject of a prior transaction between the parties. 
Following a bench trial, the court rendered judgment against ATD and Lewis jointly and
severally, and awarded Five D's actual damages of $71,000, prejudgment interest at a rate of
ten percent per annum compounded daily, and postjudgment interest at a rate of ten percent
per annum.

 In six points of error, ATD complains of: (1) the trial court's legal conclusion
that conversion occurred; (2) the sufficiency of the evidence to support the trial court's
findings of unfair competition and the measure of damages; (3) the trial court's failure to find
that Five D's waived its right to recover; (4) the trial court's calculation of prejudgment
interest; and (5) the trial court's refusal to make an additional finding of fact as to damages. 
We will affirm the judgment of the trial court.

THE CONTROVERSY

 On December 30, 1985, ATD sold all assets and publication rights to two telephone
directories to Vol S. Davis, Jr. This action concerns only the directory serving a five-county area
around Kerrville, Fredericksburg and Burnet ("the territory"); this directory was known as the
"Kerrville-Fredericksburg" book before the sale to Davis. 

 Davis, the president of Five D's, signed a promissory note and security agreement
in his individual capacity to secure part of the $1.2 million purchase price of the directories. 
Shortly thereafter, Davis leased the rights relating to the two directories to Five D's with the
consent of Lewis, as representative of ATD. Five D's redesignated the Kerrville-Fredericksburg
book as the "Heart of the Hills" directory.

 Davis filed for personal bankruptcy in February 1987 and stopped paying on the
note in April 1987. In May 1987, ATD assigned the Davis note to NBC Bank of Corpus Christi
("NBC Bank"). The following December, after making several demands for payment, Lewis
warned Five D's that he was prepared to take a crew of ATD salespeople into the territory in
order to sell as much advertising as possible and thereby inhibit Five D's advertising sales in the
territory. During February 1988, ATD began selling directory advertising to local Kerrville
businesses. ATD's sales representatives used Five D's trade name, "Heart of the Hills," and
carried with them earlier editions of the "Heart of the Hills" directory. In March, when Five D's
began its sales campaign for the next edition of the "Heart of the Hills" directory, it learned that
ATD had been in the territory with its own sales force, claiming to have repossessed the two
telephone directories. An ATD sales representative was arrested in Kerrville in April 1988 for
deceptive business practices, after portraying himself as a representative of the "Heart of the
Hills" directory in an effort to renew an advertisement. 

 On March 29, 1988, ATD filed suit in state court for judicial foreclosure of its lien
against the "Heart of the Hills" directory. ATD also filed an adversary proceeding in Davis'
personal bankruptcy case seeking judicial foreclosure. On April 28, 1988, Davis obtained a
preliminary injunction from the bankruptcy court, restraining ATD from using the trade name
"Heart of the Hills." ATD violated the injunction by continuing to represent itself as "Heart of
the Hills" in letters sent to prospective advertisers. 

 ATD's entrance into the territory eventually forced Five D's out of business. 
Because of the confusion created by the companies' competing claims to be "Heart of the Hills,"
many businesses canceled their advertisements with Five D's, which was then unable to sell any
additional advertising.

 On October 11, 1988, Davis and ATD entered into a settlement agreement by
which Davis purported to give ATD the right to foreclose on the "Heart of the Hills" directory. 
Five D's brought this suit against ATD on February 17, 1989. In a bench trial, the court found
that ATD's actions constituted conversion and unfair competition. ATD appeals that judgment.

ANALYSIS

 In its first point of error, ATD purports to challenge the sufficiency of the evidence
to support the trial court's ruling that a conversion occurred. However, ATD directs its argument
under this point not against the sufficiency of the evidence, but against the trial court's legal
conclusion--that ATD's undisputed activities in the territory constituted conversion rather than
repossession. Because ATD's complaint is that the trial court erred in ruling on a question of law,
we will address it on that basis.

 The trial court ruled that conversion occurred based on its findings that ATD
exercised dominion and control over the "Heart of the Hills" directory without the consent of Five
D's and inconsistent with Five D's right of possession. ATD claims that its activities in the
territory constituted an authorized repossession; therefore, the trial court erred in ruling that a
conversion occurred. Five D's maintains that ATD had no right of repossession, because ATD
had assigned the note and security agreement to NBC Bank prior to the alleged repossession.

 ATD assigned the Davis note and security agreement to NBC Bank in May 1987. 
ATD began telling customers that it was repossessing the directories in February 1988. ATD
claims that it did not surrender all of its rights to NBC Bank, but rather retained co-extensive
rights. The language of the assignment, however, refers to NBC Bank as the secured party and
provides that ATD "transfers, assigns and conveys unto NBC Bank Corpus Christi . . . the
promissory note . . . and all liens, rights, titles, equities and interests securing the same . . . . 
[NBC Bank] shall have the full control of the [note] and the liens securing the same." (Emphasis
added.) There is no indication in the collateral transfer that the parties intended the rights to be
co-extensive. Once a secured party assigns a note, security agreement, and all rights in collateral
to a third party, the original secured party no longer retains any right to repossess the collateral. 
See Steakley Bros. Chevrolet, Inc. v. Westbrook, 558 S.W.2d 544, 546 (Tex. Civ. App.--Waco
1977, writ ref'd n.r.e.). Because ATD transferred all rights to NBC Bank, including the right to
repossess, ATD's subsequent conduct constituted not repossession, but conversion. 

 The undisputed evidence establishes that ATD assigned the note and security
agreement to NBC Bank prior to claiming repossession of the directories. Because the legal
consequence of the assignment was to preclude ATD from repossessing the collateral, the trial
court properly ruled that ATD's activities constituted conversion. We overrule ATD's first point
of error.

 In its third and fourth points of error, ATD presents true evidentiary-sufficiency
challenges, attacking the sufficiency of the evidence to support (1) the trial court's finding that
ATD's conduct constituted unfair competition and (2) its award of damages. Findings of fact are
reviewable for legal and factual sufficiency of the evidence by the same standards used to review
jury findings. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). An appellant
who challenges the legal sufficiency of the evidence supporting an issue upon which it did not
have the burden of proof must demonstrate that there is no evidence to support the adverse
finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275 (Tex.
App.--Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider only the
evidence supporting the finding and we disregard all evidence to the contrary. Best v. Ryan Auto
Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990).

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which it did not have the burden of proof, an appellant must demonstrate that there
is insufficient evidence to support the adverse finding. Raw Hide Oil & Gas, Inc., 766 S.W.2d
at 275-76. In reviewing a factual-sufficiency challenge, we will consider and weigh all the
evidence in support of and contrary to the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). The contested finding will be upheld unless we find that the
evidence is too weak to support the finding. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 


 In its third point of error, ATD claims that the evidence is legally and factually
insufficient to support the finding that the conduct of ATD and Lewis constituted unfair
competition. To prevail on an unfair competition claim, a plaintiff must establish two elements:
(1) the plaintiff's trade name has acquired a secondary meaning through usage; and (2) the
similarity of the name used by the defendant would be likely to confuse the public. Hudgens v.
Goen, 673 S.W.2d 420, 423 (Tex. App.--Fort Worth 1984, writ ref'd n.r.e.). The trial court
found that ATD's use of the name "Heart of the Hills" constituted unfair competition because that
use was calculated to deceive and cause members of the public to trade with ATD when they
intended to trade and otherwise would have traded with Five D's. The trial court concluded that
ATD's conduct satisfied the secondary-meaning and likelihood-of-confusion tests. ATD contests
the evidentiary sufficiency of the trial court's finding only as to the likelihood-of-confusion
element, and not the secondary-meaning element. 

 The deposition testimony of three Kerrville business owners was admitted into
evidence at trial. These persons testified that the conduct of ATD's salespeople in early 1988
caused confusion as to which company, ATD or Five D's, was entitled to sell advertising in the
"Heart of the Hills" directory. As a result of the confusion, one of the three canceled her order
to purchase an advertisement, one chose not to renew her advertisement in the directory, and the
third arranged to pay whichever company published his advertisement. This testimony constitutes
sufficient evidence that ATD's conduct did cause a likelihood of confusion in the relevant
community. 

 Relying on a non-competition agreement between ATD and Five D's, ATD insists
that it had a contractual right to compete in the territory. The right to compete, however, does
not encompass a right to compete unfairly. Five D's was the first company to market the "Heart
of the Hills" directory. In April 1988, Five D's obtained a preliminary injunction prohibiting
ATD from using its the "Heart of the Hills" trade name; ATD admitted that it violated the
injunction within one week of its issuance. Although ATD was permitted to compete, its use of
Five D's trade name constituted unfair competition. Because ATD was not entitled to repossess
the directories, it had no right to use the "Heart of the Hills" trade name. We overrule ATD's
third point of error.

 In its fourth point of error, ATD claims that there was insufficient evidence to
support the trial court's award of damages. The measure of damages for conversion is the fair-market value of the converted property at the time of conversion, plus legal interest. Imperial
Sugar Co. v. Torrans, 604 S.W.2d 73, 74 (Tex. 1980); see also Steakley, 558 S.W.2d at 545-46. 
Additionally, a plaintiff is entitled to receive the sum of money necessary to compensate all actual
losses or injuries sustained as a natural and proximate result of the defendant's wrong. Virgil T.
Walker Constr. Co. v. Flores, 710 S.W.2d 159, 161 (Tex. App.--Corpus Christi 1986, no writ). 


 The measure of damages in an action for unfair competition is lost profits. Miller
v. Lone Star Tavern, Inc., 593 S.W.2d 341, 345 (Tex. Civ. App.--Waco 1979, no writ). It is not
necessary to prove lost profits with mathematical exactness; reasonable certainty will suffice. 
White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 1983).

 The record contains admissions by Lewis, the president of ATD, that the "Heart
of the Hills" directory was worth $450,000, and that the directory's estimated annual profit was
$123,000. Therefore, the trial court's award of $71,000 in damages was well within the proper
measure of damages for each cause of action, as demonstrated by Lewis' admissions. We
overrule ATD's fourth point of error.

 In its second point of error, ATD argues that the trial court erred in failing to find
that Five D's had waived its right to recover for wrongful repossession (i.e., conversion). In
support of this point, ATD relies on its October 1988 settlement with Davis in bankruptcy court. 
However, the clear language of the settlement agreement undermines this argument: 

[N]othing contained in this Compromise and Settlement Agreement should be
construed as a waiver or compromise of any claim or cause of action that could
now be asserted, or may hereafter be asserted, by Five D's, specifically, including,
but not limited to, any claims or causes of action now being asserted by Five D's
against LEWIS and ATD in the State Court Lawsuit. This reservation of rights
regarding claims that may be made by Five D's includes, but is not limited to, any
and all claims that Five D's has, or may claim to have, in the nature of unfair
competition . . . or other business torts. Furthermore, it is understood and agreed
that DAVIS' agreement to the foreclosure by ATD . . . does not constitute an
admission or stipulation by DAVIS that LEWIS or ATD have [sic] had the legal
right, at any time prior to such foreclosure, to use the names of the telephone
directories in question as a competitor of Five D's. The existence of such a legal
right is specifically disputed by DAVIS, and any questions regarding such shall be
litigated, if at all, between LEWIS, ATD, and Five D's, in an appropriate
nonbankruptcy forum.



Waiver is "an intentional relinquishment of a known right, or intentional conduct inconsistent with
claiming it, with full knowledge of material facts." Massachusetts Bonding & Ins. Co. v. Orkin
Exterminating Co., 416 S.W.2d 396, 401 (Tex. 1967). The clear language of the settlement
agreement reveals that Five D's did not waive its right to recover for wrongful repossession, but
instead reserved the right. ATD attempts to nullify the reservation of right by arguing that Five
D's was simply the alter ego of Davis. However, ATD's pleadings do not support this claim, and
ATD did not request additional findings of fact on the issue. See Tex. R. Civ. P. 298. 
Consequently, ATD has waived the issue. See Keith v. Keith, 763 S.W.2d 950, 953 (Tex.
App.--Fort Worth 1989, no writ).

 Further, ATD argues that Davis fraudulently misled ATD into believing that the
debt at issue in the bankruptcy proceeding was Five D's debt. Because ATD failed to plead the
affirmative defense of fraud, it may not raise the defense on appeal. See Tex. R. Civ. P. 94.

 The trial court's failure to find that Five D's waived its right to recover was not
so against the overwhelming weight of the evidence as to be manifestly unjust; therefore, we
overrule ATD's second point of error.

 In ATD's fifth point of error, it claims the trial court erred in compounding daily
the award of prejudgment interest. In Cavnar v. Quality Control Parking, Inc., the Texas
Supreme Court relied on equitable principles to eliminate the bar to recovery of prejudgment
interest in personal injury cases. 696 S.W.2d 549 (Tex. 1985). Cavnar recognized that an award
of prejudgment interest is necessary to compensate injured plaintiffs fully because "[t]hey have
been denied the opportunity to invest and earn interest on the amount of damages between the time
of the occurrence and the time of judgment." Id. at 552; see also Prudential Ins. Co. v. Jefferson
Assocs., 839 S.W.2d 866, 879 (Tex. App.--Austin 1992, writ denied). Additionally, a potential
award of prejudgment interest encourages settlement and discourages delay. Cavnar, 696 S.W.2d
at 554; see also O'Reilly v. Grafham, 797 S.W.2d 399, 401-02 (Tex. App.--Austin 1990, no writ)
(extending Cavnar reasoning to other types of cases). Cavnar held that the award of prejudgment
interest should be compounded daily on damages that have accrued prior to judgment. Cavnar,
696 S.W.2d at 554. 

 Although Cavnar held that interest does not begin to accrue until six months after
the incident giving rise to the cause of action, id. at 555, the six-month delay does not apply in
conversion cases. Security Sav. Ass'n v. Clifton, 755 S.W.2d 925, 935 (Tex. App.--Dallas 1988,
no writ). When plaintiffs prevail on a conversion claim, they are entitled to receive the value of
the property on the date of conversion plus legal interest for loss of the use of the property from
the date of conversion until the date of judgment. Id.

 ATD attempts to avoid the application of Cavnar by relying on Tex. Rev. Civ. Stat.
Ann. art. 5069-1.05, § 6(a) (West Supp. 1993), which authorizes the award of prejudgment
interest in wrongful death, personal injury, and property damage cases, and provides that "[t]he
rate of prejudgment interest shall be the same as the rate of postjudgment interest at the time of
judgment and shall be computed as simple interest." Id. § 6(g) (emphasis added). ATD argues
that this Court must modify the award of prejudgment interest to comply with the requirements
of article 5069-1.05, section 6. 

 In resolving the statute's applicability to the causes of action involved in this
appeal, we must determine the legislative intent from the statute's language and not elsewhere,
giving full effect to all of the statutory terms. Texas Highway Comm'n v. El Paso Bldg. &
Constr. Trades Council, 234 S.W.2d 857, 863 (Tex. 1950). Since the legislature did not
specifically define the statutory terms it used, the words shall be given their ordinary meaning. 
Tex. Gov't Code Ann. § 312.002(a) (West 1988); Satterfield v. Satterfield, 448 S.W.2d 456, 459
(Tex. 1969). Article 5069-1.05 does not define "property damage" or give any indication that the
term embraces the loss of an economic interest; hence, we must give "property damage" its
ordinary meaning. One court has concluded that because property damage ordinarily entails
physical "destruction" of property, it does not embrace economic loss. Amarillo Nat'l Bank v.
Terry, 658 S.W.2d 702, 704 (Tex. App.--Amarillo 1983, no writ). Because Five D's interest in
the two telephone directories constituted intangible property, the injury inflicted was not physical
in nature, but economic. We understand conversion and unfair competition to constitute economic
injury, which does not fall within the plain meaning of "property damage." (1)

 If the legislature intended to apply the provisions of section 6 to all torts, it could
have expressed this intent; however, section 6 enumerates only wrongful death, personal injury,
and property damage cases as those in which prejudgment interest is to be computed as simple
interest. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a), (g) (West Supp. 1993). ATD gives
us no reason to read section 6 more broadly, and we decline to hold that conversion or unfair
competition falls within the meaning of "property damage" as that term is used by the legislature
in article 5069-1.05. Therefore, we conclude that article 5069-1.05, section 6(a), does not control
in conversion cases. 

 As we held in O'Reilly, the rationale of Cavnar is as applicable in the conversion
context as in the wrongful-death context. O'Reilly, 797 S.W.2d at 401-02. In this case, ATD's
conduct denied Five D's the opportunity to invest and earn interest on the amount of damages
between the date of conversion and the date of judgment. We hold that the equitable principles
outlined in Cavnar support the trial court's award of prejudgment interest compounded daily. We
overrule ATD's fifth point of error.

 In its sixth point of error, ATD argues that the trial court erred in refusing to adopt
ATD's requested finding of fact number eight, which sought clarification of the theory the trial
court used in calculating damages. Additional findings of fact and conclusions of law are required
only when they relate to ultimate or controlling issues, not when the findings or conclusions would
be evidentiary in character. Tex. R. Civ. P. 298; see also Dura-Stilts Co. v. Zachry, 697 S.W.2d
658, 661 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). In Dura-Stilts, the defendant
asked in its request for additional findings of fact and conclusions of law "by what credible
evidence" or "how" the trial court reached its original findings and conclusions. The court of
appeals, concluding that the findings in question were "evidentiary only and [did] no more than
request explanations of the court's ruling in the case," held that the trial court did not err by
refusing to file additional findings and conclusions. Id. at 661.

 A trial court is not required to set out in detail every reason or theory by which it
arrived at its final conclusions. Chislum v. Home Owners Funding Corp., 803 S.W.2d 800, 805-06 (Tex. App.--Corpus Christi 1991, writ denied). ATD argues that the trial court's refusal to file
the requested additional finding of fact regarding its theory in measuring damages was harmful. 
However, ATD's request, like the defendant's in Dura-Stilts, was merely evidentiary; therefore,
the trial court did not err in refusing to detail its theory. We overrule ATD's sixth point of error.

CONCLUSION


 Finding no error, we affirm the judgment of the district court.




 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: March 17, 1993

[Publish]

1. [1] One federal district court has expressly held that the conversion of a property interest
does not qualify as "property damage" as contemplated by article 5069-1.05, § 6(a). See
Crocker Nat'l Bank v. Ideco Div. of Dresser Indus., Inc., 739 F. Supp. 338 (S.D. Tex. 1990).