Opinion filed September 2,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00026-CV

                                                    __________

 

                               TIFFANY
DAWN O’QUIN, Appellant

 

                                                             V.

 

                         JAMES
RICHARD HEATHCOCK, Appellee



 

                                  On
Appeal from the 393rd District Court

 

                                                           Denton
County, Texas

 

                                             Trial Court
Cause No. 2006-61191-393

 



 

                                            M
E M O R A N D U M   O P I N I O N

            This
is a child custody dispute.  The trial court granted the parties a divorce, named
them joint managing conservators of their two children, and granted James
Richard Heathcock the right to determine the children’s primary residence.  We affirm.

I. 
Background Facts

            Heathcock
and Tiffany Dawn O’Quin were married and had two children, R.H. and C.H. Heathcock
filed for divorce.  The trial court signed temporary orders that appointed the
parties temporary joint managing conservators of the children and gave
Heathcock the right to designate the children’s primary residence.  At the time
of trial, R.H. was six years old and in kindergarten. C.H. was two years old.  The
trial court conducted a bench trial and entered a divorce decree that gave
Heathcock the right to designate the children’s residence and gave O’Quin
scheduled visitation that varied in some ways from the standard possession
order.

II. 
Issues

            O’Quin
challenges the trial court’s judgment with three issues.  She contends first,
that the trial court treated the trial as a modification proceeding rather than
an initial determination and that this imposed a heightened burden of proof
upon her; second, that the trial court abused its discretion by granting
Heathcock the right to determine the children’s residence; and finally, that
the trial court abused its discretion by not granting her overnight possession
of the children during the second and fourth weeks of the month.

III. 
Discussion

            A. 
Burden of Proof. 

            O’Quin
argues that the trial court improperly imposed a higher burden of proof upon
her because it treated the trial as a modification proceeding rather than an
initial determination.  To substantiate this contention, she alleges that
maintaining the status quo was one of only two reasons advanced by Heathcock in
support of his request to determine the children’s primary residence, and she
points to the trial court’s statement at the conclusion of trial that “I’m
going to leave the father as the primary joint managing conservator.”

            Heathcock
contests the characterization of his case; but, regardless, one party’s trial
strategy does not delineate the burden of proof imposed by the trial court. 
Moreover, the trial court’s concluding statement was not a statement of law but
was simply an informal, shorthand description of its holding.  We note in this
regard that, at the very beginning of the trial when O’Quin’s counsel tried to
discuss the temporary orders, the trial court interjected: “I’m not going to –
I’m not – I’m going to hear evidence and decide what’s best.”  The trial court
did not impose a heightened burden of proof, and Issue One is overruled.

            B. 
Sufficiency of the Evidence.  

            O’Quin
contends in her second issue that the trial court abused its discretion by
granting Heathcock the right to determine the children’s primary residence
because there was insufficient evidence to support the trial court’s finding of
fact that this would serve the children’s best interest.  This requires that we
employ a two-pronged inquiry: (1) did the trial court have sufficient
information upon which to exercise its discretion and (2) did the trial court
err in its application of discretion?  In re J.A.H., 311 S.W.3d 536, 540
(Tex. App.—El Paso 2009, no pet.).  The traditional sufficiency inquiry applies
to the first question.  Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.
App.—El Paso 1998, no pet.).  Once we have determined whether sufficient
evidence exists, we must then decide whether the trial court made a decision
that was neither arbitrary nor unreasonable.

In
considering a legal sufficiency or “no evidence” point, we consider the
evidence in the light most favorable to the verdict and indulge every
reasonable inference that would support it. City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).
 Even if evidence is undisputed, it is the province of the trier of fact to
draw from it whatever inferences it wishes so long as more than one inference
is possible.  Id. at 821.  But if the
evidence allows only one inference, neither the trier of fact nor the reviewing
court may disregard it.  Id.
 The trier of fact is the sole judge of the credibility of the witnesses and
the weight to give their testimony.  Id. at 819.  When there is
conflicting evidence, it is the province of the trier of fact to resolve such
conflicts.  Id. at 820.  In every
circumstance in which a reasonable trier of fact could resolve conflicting
evidence either way, the reviewing court must presume it did so in favor of the
prevailing party and disregard any conflicting evidence.  Id. at 821. 

A
factual sufficiency point requires examination of all of the evidence to
determine whether the finding in question is so against the great weight and
preponderance of the evidence as to be manifestly unjust.  In re King’s
Estate, 244 S.W.2d 660 (Tex. 1951).
 The reviewing court cannot substitute its conclusions for those of the trier
of fact.  If there is sufficient competent evidence of probative force to
support the finding, it must be sustained.  Carrasco
v. Goatcher, 623 S.W.2d 769 (Tex. App.—El
Paso 1981, no writ).  It is not within the province of this court to
interfere with the trier of fact’s resolution of conflicts in the evidence or
to pass on the weight or credibility of the witness’s testimony.  Benoit v.
Wilson, 239 S.W.2d 792 (Tex. 1951).
  In a bench trial, findings of fact are the equivalent of a jury answer to the
special issues.  Associated
Tel. Directory Publishers, Inc. v. Five D’s Publ’g Co., 849 S.W.2d 894, 897 (Tex. App.—Austin 1993, no writ).

The
term “abuse of discretion” is not susceptible to rigid definition.  Lindsey, 965 S.W.2d at 591.  The test is not whether,
in the opinion of the reviewing court, the facts present an appropriate case
for the trial court’s action, but whether the court acted without reference to
any guiding rules and principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985). Stated differently, the appropriate inquiry is
whether the ruling was arbitrary or unreasonable.  Smithson
v. Cessna Aircraft Co., 665 S.W.2d
439, 443 (Tex. 1984).  The mere fact that a trial judge may decide a
matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Sw. Bell
Tel. Co. v. Johnson, 389 S.W.2d
645, 648 (Tex. 1965). 

            Texas
courts traditionally use a non-exhaustive list of factors, known as the Holley
factors, when determining the best interest of the children.[1] 
The original Holley decision was a termination case, but the factors
still provide a relevant framework for our analysis.

            The
children were too young to testify, but O’Quin contends that R.H. expressed a
preference for living with her because he complained that it is unfair for
Heathcock to have eleven days custody and her only three.  But, she conceded
that she did not know how R.H. would feel if this were reversed.

            O’Quin
argues that the children’s emotional and physical needs would best be served by
having her designate their primary residence, and she points to the children’s
young ages and the fact that Heathcock agreed to additional Saturday
visitation, that she had a large house that she shared with her sister and
niece, and that she had family members to help watch the children. O’Quin also
points to a court-ordered social study performed by Jo Anne Nowick Oliver.  Oliver
described Heathcock as a good father, concerned about the children, and O’Quin
as a good parent and loving mother.  Oliver recommended that O’Quin be given
the right to designate the children’s residence and explained that this was
due, in part, to their young ages.[2] 
Finally, O’Quin believes that R.H. needs counseling because of behavioral
issues and that C.H. needs additional help because of delayed development, but Heathcock
disagrees and, thus, they are not receiving needed help.

            Heathcock
points out that Oliver’s evaluation gave a preference to O’Quin because she is
a woman and that this runs counter to Texas law.  See Tex. Fam. Code Ann. § 153.003 (Vernon
2008) (when determining conservatorship and possession issues, trial courts
shall consider the qualifications of the parties without regard to the sex of
the party or child).  Heathcock called R.H.’s teacher and school counselor as
witnesses.  Diane Kenyon is R.H.’s kindergarten teacher. She testified that
R.H. was doing great in school, and that she did not see any need for him to go
to counseling.  R.H.’s school counselor, Leticia Otero, testified that
counseling might cause R.H. more harm than good.  C.H. was adopted.  Heathcock
testified that he was concerned about C.H.’s limited speech but that C.H.’s
biological sister was also slow to start speaking, and he believed that C.H.
was making progress.

            Neither
party described the other as a bad parent, but both believed that they were a
better parent.  O’Quin complains that Heathcock did not get the children
involved in appropriate activities, such as sports, but that she intended to do
so.  She noted that she had talked to counselors about handling R.H.’s behavior
and that she intended to enroll R.H. in a school near her home that she
believed would be better than the one he was currently attending because of its
smaller class sizes.  Heathcock points out that O’Quin committed adultery, that
she is in counseling and has taken medication for depression, that she has
admitted to drinking alcohol at work, and that her boyfriend has drank at work
and then driven her home.  He contrasted this by describing his children’s
normal daily schedule, including activities such as going to the park, playing
tee ball, doing homework, taking naps, and watching movies.  Finally, the trial
court had the benefit of R.H.’s experience at school while living primarily
with Heathcock.

            O’Quin
was critical of an individual who lived with them during the marriage and
helped watch the children when they were at work.  She successfully requested a
provision in the temporary orders prohibiting this individual from being around
the children.  She complained at trial that this provision was violated.  Heathcock
did not respond to O’Quin’s allegation at trial but points out in his brief
that the trial court also prohibited allowing an unrelated adult with whom
either party has an intimate or dating relationship to remain overnight in the
same residence as the children and that O’Quin admitted at trial that one night
her boyfriend slept in the same house as her and the children.

            The
trial court had sufficient information with which to exercise its discretion. 
The evidence indicates that both parties are loving, caring parents and that
each has the children’s best interest at heart.  Because the trial court had
conflicting evidence and because that evidence could be resolved in favor of
either party, we cannot conclude that the trial court abused its discretion by
granting Heathcock the right to determine the children’s residence.  Issue Two
is overruled.

            C. 
Overnight Visitation.

            O’Quin
contends in her third issue that the trial court abused its discretion by not
granting her overnight possession during the second and fourth weeks of each
month.  Heathcock and O’Quin were both employed as bartenders at Cowboy’s Red
River.  O’Quin works Thursday, Friday, and Saturday nights from 6:30 or 7:30
until 3:00 the following morning.  The trial court varied from the standard
possession order to accommodate her work schedule and the children’s young
ages.  O’Quin was given possession of the children on the first, third, and
fifth Fridays of the month beginning when school ends, or at 3 p.m. when school
was not in session, and ending at 7 p.m. the following Monday.  She was also
given possession on the second and fourth Mondays beginning at 3 p.m. and
ending at 7 p.m.

            Heathcock
responds that O’Quin did not request overnight visitation before or during
trial and, therefore, has not preserved this issue.  We agree.  Texas public
policy encourages frequent contact between children and their parents to optimize
the development of a close and continuing relationship between each parent and
child.  Tex. Fam. Code Ann. § 153.251(b)
(Vernon 2008).  For parents who reside 100 miles or less apart, the legislature
has provided a visitation schedule that divides weekends and holidays and
provides for weekday and vacation visitation.  Tex. Fam. Code Ann. § 153.312(a) (Vernon Supp. 2009).  This
provision has been amended since trial.[3] 
The statute in effect at the time of trial required a possessory conservator
requesting overnight visitation to make an election before or at the time of
the rendition of the original or modification order.  O’Quin points us to no
such election, and none is contained within the record.  Moreover, we note that
O’Quin received longer periods of visitation than required by the standard
visitation order and that, by moving her weekday visitation from Thursday to
Monday, she was freed from a work conflict.  Issue Three is overruled.

IV. 
Conclusion

            The judgment of the
trial court is affirmed.

 

 

                                                                                                RICK
STRANGE

September 2, 2010                                                                  JUSTICE

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Holley v. Adams,
544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are: (1) the desires of the children; (2) the emotional and physical
needs of the children now and in the future; (3) the emotional and physical
danger to the children now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these individuals
to promote the best interest of the children; (6) the plans for the children by
the individuals seeking custody; (7) the stability of the home; (8) the acts or
omissions of the parent that may indicate that the existing parent-child
relationship is not proper; and (9) any excuse for the acts or omissions of the
parent.

 





[2]Oliver testified:

                A.  And I additionally have a lot of
background in child development, so I think that primary conservatorship should
also be pinned on the developmental stages of the kid.

 

          Q.  And what does that mean?

 

                A.  To me that means they’re pretty
young.  That’s why I opted for them to have primary conservatorship remain with
the mother till they get a little older.





                [3]Act of May 27, 2009, 81st Leg., ch. 1113, § 6 (eff. Sept.
1, 2009).