In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-25-00198-CV
_____


**ROBERT HUBER, Appellant**

**V.**

**ISI CONTRACTING, INC., Appellee**

═══════════════════════════════════════════

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-08-12394**

═══════════════════════════════════════════

### OPINION

Robert Huber sued ISI Contracting, Inc. for continuing trespass to real property arising from ISI's construction of a state highway improvement project adjacent to Huber's property.[1] ISI filed a traditional motion for summary judgment, alleging it is immune from liability for Huber's claim under Texas Civil Practice and

_____

[1]Huber also sued the Texas Department of Transportation ("TxDOT") for trespass and inverse condemnation. TxDOT is not a party to this appeal.

1

Remedies Code section 97.002. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002. The trial court granted ISI's motion for summary judgment, and Huber filed an interlocutory appeal. *See id.* § 51.014(a)(17). Because ISI did not conclusively establish each of the elements of its immunity defense under section 97.002, we reverse the summary judgment and remand to the trial court for further proceedings.

## Background

Huber owns and operates Bill's Café in Montgomery County. The café operates on two tax parcels that form a triangle on Loop 494 in Kingwood. Improvements on the northern parcel include a restaurant building, covered patio, paved parking lot, shed, and courtyard with palapas. The southern parcel is used for additional parking and storage.

In 2019, TxDOT began State Highway Improvement Project No. CSJ 0177-14-010. TxDOT contracted with ISI to perform construction for the project. According to Huber's most recent petition, almost immediately after the project began, ISI set up a staging area on the south end of Huber's property, where trucks, building supplies, and concrete culverts were stored off and on during four years of construction. The petition alleges that about two years into the project, ISI "began to significantly impair access to the property." According to Huber, ISI dug a hole the size of a car just a few feet from the café's covered patio, separately caused a "water break" that flooded the café's parking lot, frequently blocked parking areas

2

with construction barricades and vehicles, and sometimes made the property completely inaccessible from the highway. The petition asserts, "On many days, access was so inadequate that the restaurant was not able to open." Huber claims the café's yearly profits dropped by over 50% during the construction project. The petition asserts a cause of action for trespass to real property based on allegations that ISI "repeatedly physically invaded and occupied Huber's property without any right or permission to do so, causing damages to Huber's real property and his business over the course of its four-year construction project."

ISI filed a general denial and asserted immunity under section 97.002 of the Texas Civil Practice and Remedies Code. ISI subsequently filed a traditional motion for summary judgment arguing that as a matter of law ISI is immune from liability to Huber because the summary judgment evidence conclusively establishes that "ISI was a contractor constructing a highway for TxDOT and, at the time of the alleged trespass allegedly resulting in property damage, was in full compliance with all contract documents material to the condition or defect alleged by Plaintiff as the proximate cause of his property damage." ISI provided the trial court summary judgment evidence including the contract between ISI and TxDOT, a copy of TXDOT's "Standard Specifications for Construction and Maintenance of Highways, Streets, and Bridges" which were incorporated into the contract, an aerial photo with markings purporting to show TxDOT's right-of-way, and excerpts of deposition

3

testimony concerning ISI's work. Huber filed a response arguing that ISI failed to carry its burden to establish each element of its affirmative defense. Huber's summary judgment evidence included a copy of excerpts of TXDOT's standard specifications with which Huber claims ISI failed to comply, and diagrams, photographs and deposition testimony that Huber claims prove that ISI trespassed on his property.

The trial court signed an order granting ISI's traditional motion for summary judgment. This interlocutory appeal followed.

Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). A party who moves for traditional summary judgment on an affirmative defense, such as immunity from liability, must conclusively establish each element of its defense. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). In our review, we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "Evidence is conclusive only if reasonable people could not differ in their conclusions[.]" *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

"On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). "Summary judgments must stand on their own merits[.]" *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). "The non-movant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based." *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013).

Huber's brief presents one issue: "Whether ISI conclusively established that it was in compliance with its contractual obligation with TXDOT not to trespass during the time frame alleged by Huber, as required to establish its immunity defense under Section 97.002 of the Texas Civil Practice and Remedies Code." However, "we treat issue statements in briefs as 'covering every subsidiary question that is fairly included.'" *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 826 (Tex. 2022) (citing Tex. R. App. P. 38.1(f)). "A brief's issue statement 'is sufficient if it directs the attention of the appellate court to the error about which [the] complaint is made.'" *Id.* (citing *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995)). Beyond its issue statement, Huber's brief broadly argues that ISI failed to satisfy its burden to conclusively establish its affirmative defense of contractor immunity

5

under section 97.002. Therefore, in our de novo review, we analyze whether ISI conclusively established each element of its immunity defense under section 97.002. *See Weekley Homes,* 646 S.W.3d at 827 (concluding that non-movant who substantively briefed only one subsection of Civil Practice and Remedies Code section 95.002 nevertheless sufficiently preserved appellate review of the applicability of a different subsection by quoting both subsections and describing and citing authority regarding movant's burden to conclusively establish both subsections).

Analysis

In its entirety, section 97.002 of the Texas Civil Practice and Remedies Code reads as follows:

> A contractor who constructs or repairs a highway, road, or street for the Texas Department of Transportation is not liable to a claimant for personal injury, property damage, or death arising from the performance of the construction or repair if, at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death.

Tex. Civ. Prac. & Rem. Code Ann. § 97.002. "Notably, section 97.002 has three distinct parts: (1) an introduction describing who qualifies for the statute's protection, (2) a middle portion describing the specific protection the statute affords, and (3) an ending setting forth the condition that must be met for such protection to apply." *A.S. Horner, Inc. v. Navarrette,* 656 S.W.3d 717, 721 (Tex. App.—El Paso

6

2022, no pet.). A defendant seeking the immunity provided in the middle portion must, therefore, establish that it is a party who qualifies for protection according to the introduction, and must also establish all elements included in the ending. The statute's plain language does not provide "blanket immunity . . . against all claims for any circumstances[.]" *See ISI Contracting, Inc. v. Markham*, 647 S.W.3d 489, 496 (Tex. App.—San Antonio 2022, pet. denied). "To the contrary, the statute contains multiple applicability requirements to create immunity, which must all be met[.]" *Id*.

*Did ISI conclusively establish it is a party that may qualify under 97.002?*

The introductory language of section 97.002 indicates a party who constructs or repairs a highway for TxDOT may qualify for protection under the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 97.002. ISI provided the trial court conclusive summary judgment evidence that it performed repairs on Loop 494 for TxDOT, satisfying the statute's introduction.

*What protection may be provided to ISI under 97.002?*

Turning our attention to the middle portion of the statute, it provides that a qualifying contractor is not liable for "personal injury, property damage, or death arising from the performance of the construction or repair[.]" *Id*. Huber's petition does not allege personal injury or death. ISI's motion for summary judgment asserts that since "[Huber] is suing ISI for property damage arising from ISI's contract

7

performance[,]" the immunity provided by the statute applies. It is true that Huber's petition alleges property damage, but that is not all it alleges; Huber also asserts the loss of use of his property and lost profits. Therefore, a closer comparison of the statute and the petition is necessary.

Because section 97.002 does not define "property damage," we must apply the term's "common, ordinary meaning unless a contrary meaning is apparent from the statute's language. To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34-35 (Tex. 2017) (citing *Univ. of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 52 (Tex. 2015)). Merriam-Webster defines "property damage" as "damage or destruction to houses, cars, etc." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/property%20damage (last visited Mar. 24, 2026). The term "property damage" is used in other statutes, and court decisions have consistently interpreted the term as referring to physical damage or destruction of property. *See Spangler v. Jones*, 861 S.W.2d 392, 398 (Tex. App.—Dallas 1993, writ denied) (construing statute providing for prejudgment interest on property damage not to apply to economic loss resulting from breach of fiduciary duty and fraud); *Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.*,

8

849 S.W.2d 894, 900 (Tex. App.—Austin 1993, no writ) (construing prejudgment-interest statute not to apply to economic loss resulting from conversion of telephone directories); *Amarillo Nat'l Bank v. Terry*, 658 S.W.2d 702, 704 (Tex. App.—Amarillo 1983, no writ) (construing statute creating parental liability for property damage caused by minor not to apply to economic loss sustained by bank due to minor's unauthorized withdrawals). "From these cases it is clear that property damage cannot consist merely of damage to an intangible asset or increased operational costs. Instead, some physical destruction of tangible property must occur." *Zurich Am. Ins. Co. v. Hughes, Watters & Askanase, L.L.P.*, No. 11-05-00044-CV, 2006 Tex. App. LEXIS 6037, at *9 (Tex. App.—Eastland July 13, 2006, no pet.) (mem. op.) (construing prejudgment-interest statute). Because section 97.002 provides immunity only against liability for "personal injury, property damage, or death[,]" we conclude that it does not provide immunity from liability for economic loss that does not originate from physical damage to, or destruction of, property.

Huber asserts only one cause of action against ISI: continuing trespass to Huber's real property. It is not necessary to prove physical damage to one's property to recover damages for trespass. In a "writ refused" opinion almost a century ago, this Court recognized the rule that "every unauthorized entry upon land of another is a trespass *even if no damage is done* or the injury is slight, and gives a cause of

9

action to the injured party." *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App.—Beaumont 1934, writ ref'd) (emphasis added). "The gist of an action of trespass to realty is the injury to the right of possession." *Pentagon Enters. v. Sw. Bell Tel. Co.*, 540 S.W.2d 477, 478 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Damages recoverable for trespass to real property "include cost of restoration or repair of the land to its former condition, loss of use of the land, and loss of expected profits from use of land[.]" *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.) (citations omitted). "The law is well settled that where the owner of land establishes that his land has been trespassed upon and appropriated by another to his use, the owner may recover as damages from the trespasser the reasonable value of the use of the portion of the land occupied by him." *Bradley v. McIntyre*, 373 S.W.2d 389, 390 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.). "The purpose of the measure of damage being based upon the value of the loss of use is to compensate the owner for his loss due to the inability to use the property for its normal purposes." *Etex Tel. Coop., Inc. v. Sanders*, 607 S.W.2d 278, 281 (Tex. Civ. App.—Texarkana 1980, no writ). This principle is demonstrated in *Mangham v. Hall*, where the Halls made allegations similar to those in Huber's petition:

Plaintiffs alleged that they were the owners of a laundromat business; that "beginning about 1967", Mangham, who owned real property adjoining a parking lot owned by the plaintiffs and used by their customers, began the construction of a building, which was built for him by Valcon, Inc.; that during the course of the construction the defendants drove their heavily loaded trucks over and across the parking lot of the Halls and committed certain other enumerated acts of trespass; that following the completion of the building, the defendant Mangham continued to trespass upon the parking lot, and "this continued until in the year 1969", when Valcon built a new building "on the front part" of the first building for Mangham; that the defendants, during the course of construction of the new building in 1969, actually ordered plaintiffs' customers to move their cars from plaintiffs' parking lot; that the customers quit using plaintiffs' laundromat because of defendants' trespasses; and that "same continued as a continuing trespass from May 1969 to October 1969[.]"

564 S.W.2d 465, 466 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). A jury awarded the Halls property damages of $165.08 for destruction of the fence and $10,000 for "loss of business." *Id*. Although the court of appeals ultimately held the trial court's charge should have asked the jury to award lost net profit rather than "loss of business," the court nevertheless recognized,

Where a business which was already established and was making a profit at the time a person trespassed on property which was used by the business, and the trespass resulted in a diminution in the amount of gross receipts which could have been expected in the light of past developments, existing conditions, and reasonable forecasts, the owner of the business is entitled to recover damages for the actual loss (profits) sustained by him because of the trespass.

*Id*. at 468. Huber's petition alleges Huber sustained a diminution in revenue resulting from ISI's alleged activities which include placing construction materials and

11

vehicles on the property, denying access to the business, and taking up parking spaces which could have been used by customers. Although other portions of the petition could be construed as seeking loss of use and lost profits as elements of damages caused by physical damage to Huber's property such as flooding and a car-sized hole, the petition expressly includes allegations of fact which would give rise to a claim for loss-of-use and lost-profit damages resulting from the alleged trespass itself, not derived from any physical damage to the property. For example, the petition alleges ISI's "occupation" of Huber's property "deprived him of an important parking area, which had a material impact on his business." We conclude the order granting summary judgment disposing of all of Huber's claims was improper because ISI is not immune from liability for any damages recoverable for alleged injury to Huber's right of possession that did not originate from physical damage to Huber's property.

*Did ISI conclusively establish each statutory condition?*

Regarding Huber's claims for physical damage to his property, we turn our attention to the ending of section 97.002 which requires a contractor to show that "at the time of the personal injury, property damage, or death, the contractor is in compliance with contract documents material to the condition or defect that was the proximate cause of the personal injury, property damage, or death." Tex. Civ. Prac. & Rem. Code Ann. § 97.002. We agree with our sister court's observation that this

12

portion of the statute "contains multiple applicability requirements" for a contractor seeking immunity. *Markham,* 647 S.W.3d at 496. Unpacking this language, we note that it requires: (a) personal injury, property damage, or death; (b) a condition or defect that proximately caused said personal injury, property damage, or death; (c) contract documents material to said condition or defect; and (d) the contractor's compliance with said documents at the time of the personal injury, property damage, or death.

Condition or Defect

As discussed above, portions of Huber's petition allege property damage satisfying element (a), so we turn our attention to element (b) which requires that the property damage be proximately caused by a "condition or defect." Although ISI, as the party moving for summary judgment on an affirmative defense, had the burden to conclusively establish each element of its defense, we do not read the statute as reversing a plaintiff's burden to establish the proximate cause of their own damages; rather, a trial court may rely on the plaintiff's live pleading regarding the alleged cause or causes of the plaintiff's alleged damages, along with any evidence offered by the parties, to determine whether the alleged damage was proximately caused by a condition or defect as required by the statute. *See Neese v. Lyon*, 479 S.W.3d 368, 375 (Tex. App.—Dallas 2015, no pet.) ("Although pleadings generally do not constitute summary-judgment evidence, a summary-judgment movant may rely on

13

judicial admissions in the nonmovant's live pleading."). Here, ISI attached Huber's petition as a summary-judgment exhibit, but the only property damage mentioned in the petition is alleged to have been caused, not by any condition or defect, but by ISI's alleged activities such as digging a car-sized hole or causing a "water break" that flooded the parking lot.[2] *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (distinguishing between activities and conditions in a negligence context based on whether an injury is caused "by or as a contemporaneous result of the activity itself rather than by a condition created by the activity.").

We have recognized that section 97.002 was enacted because contractors "must conform to the work specifications set by the governmental unit overseeing the project" and that "[s]ometimes those specifications may be inadequate or flawed to such a degree as to threat[en] or cause harm or damage to some person or some property." *APAC-Texas, Inc. v. Beasley*, No. 09-13-00390-CV, 2014 Tex. App. LEXIS 2570, at *4-5 (Tex. App.—Beaumont Mar. 6, 2014, no pet.) (mem. op.) (quoting House Comm. on Civ. Practices, Bill Analysis, Tex. H.B. 1699, 78th Leg.,

---

[2]To the extent the petition may be unclear regarding whether Huber's alleged property damage was caused by an activity rather than a condition or defect, the procedure for addressing a defective pleading is to file a special exception with an opportunity to replead prior to summary judgment. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 54-55 (Tex. 2003); Tex. R. Civ. P. 90, 91, 166a.

14

R.S. (2003)).[3] "It is clear from the language of section 97.002, when read in its entirety, that the Legislature enacted the statute to shield contractors who construct or repair highways for TxDOT from liability in situations where it is affirmatively shown that the contractors complied with TxDOT specifications over which they had no control." *A.S. Horner, Inc.*, 656 S.W.3d at 725-26. Nothing in the text of the statute indicates the legislature intended to provide immunity for damages caused by a contractor's activities rather than by "conditions or defects" that conform to TxDOT's specifications. If a contractor's employee negligently operates a vehicle that collides with another vehicle and propels it over a guardrail that the contractor installed in compliance with TxDOT's specifications, the statute would protect the contractor from liability under a theory that the guardrail was too low, but it would not provide immunity from liability for the employee's negligent driving activity which led to the collision with the other vehicle.

In *Keetch*, the Court concluded a plaintiff was injured as a result of the slippery condition of the floor rather than the activity of Kroger's employee who allegedly over-sprayed plants with a leaf-shining substance. *See Keetch*, 845 S.W.2d at 263, 266. We acknowledge conditions and defects such as standing water or a car-sized hole can proximately cause personal injury, property damage or death as

---

[3]Our reference to the legislative history is not meant to imply the meaning of the text is unclear.

contemplated by the statute. But Huber's petition does not include a claim for property damage *proximately caused by* a condition or defect such as a hole or floodwater; it alleges damage to Huber's real property *in the form of* a hole and floodwater, both of which Huber claims to have been caused by ISI's trespassing activities rather than by any condition or defect arising from ISI's work. Therefore, we conclude ISI failed to conclusively establish that the property damage alleged in Huber's petition was proximately caused by (or is alleged in Huber's petition to have been proximately caused by) a "condition or defect" as required by section 97.002.

Contract Documents Material to the Condition or Defect

Lastly, in the event some portion of Huber's petition could be construed as including a claim for property damage proximately caused by a condition or defect, we turn our attention to elements (c) and (d) which required ISI to conclusively establish the existence of contract documents material to the condition or defect and ISI's compliance therewith at the time of the property damage. ISI provided the trial court with approximately 1,400 pages of construction documents. ISI's motion for summary judgment does not direct the trial court to any contract documents or standard specifications that are material to a contractor's trespassing onto, invading, occupying, blocking access to, digging holes or causing flooding on property adjacent to a highway project. Instead, ISI relies on the testimony of TxDOT's area engineer who answered affirmatively to a deposition question asking whether "the

16

contract obligated ISI to stay within TxDOT's right-of-way because that is what is provided by the plans[.]"

The area engineer's testimony concerning what the contract says about staying within the right-of-way is not conclusive, not only because the area engineer testified that he would "have to review the exact language" of the contract in response to a related question immediately preceding the cited testimony, but also because the testimony is contradicted by other evidence in the summary judgment record. Standard Specification Item 6.6 directs a contractor to "[o]btain approval to store materials on the right of way. Storage space off the right of way is at the Contractor's expense." Contrary to the area engineer's testimony, the contract does not require a contractor to stay within the right-of-way, nor does it prohibit a contractor from storing materials on private property adjacent to TxDOT's right-of-way; it simply requires that the contractor do so at the contractor's expense. Such is the request of Huber's petition.

Compliance with Contract Documents

To the extent Item 6.6 is material to any "condition or defect" that proximately caused Huber's alleged "property damage," it bears repeating that Item 6.6 indicates, "Storage space off the right of way is at the Contractor's expense." Huber did not bear the burden of proof in response to ISI's motion for summary judgment, and his petition alleges he was not compensated for ISI's alleged "occupation" of his

17

property. In order to prove compliance with Item 6.6, ISI bore the burden to establish, conclusively, either that it did not store anything on Huber's property or that it did so at ISI's expense. ISI produced no evidence Huber was compensated for any alleged use of his property, and as indicated below, the summary judgment evidence raises genuine issues of fact regarding whether ISI stored construction materials on Huber's side of the boundary separating his property from TxDOTS's right-of-way.

ISI argues it must have been in compliance with *all* contractual requirements at the time Huber allegedly sustained property damage, because

> if ISI had deviated from the Contract without direction from the Engineer, TxDOT would not have accepted the work or paid ISI. Indeed, [the area engineer] testified that all of ISI's work, including its use of the right-of-way for a staging area, was inspected, authorized, accepted, and paid for by TxDOT. [The area engineer] testified that ISI performed its work in compliance with the ISI-TxDOT Contract through the date ISI removed its equipment and materials from the right-of-way in front of [Huber's] property and was in full compliance with the Contract on the date it removed its equipment and materials from the right-of-way.

Attached to his response, Huber provided the trial court photographs showing construction materials and vehicles on Huber's side of the utility poles which the area engineer testified were a rough indicator of the boundary between TxDOT's right-of-way and Huber's property. Huber directed the trial court's attention to the deposition of the area engineer who testified:

Q.     But we can agree generally that the right-of-way -- anything going inwards into the client's property beyond these poles basically, is it on the Plaintiff's property? Can you agree with that, that the poles are -- To me, they appear on the property, but that they are roughly an indicator of where that boundary line is?

A.     That's correct.

Q.     So anything inward of those poles in the Huber property is on the Huber property?

A.     That's correct.

. . .

Q.     Mr. Galland, would you agree that this picture shows equipment beyond the poles going into Plaintiff's property?

A.     Yes.

Q.     Do you understand what this equipment is from looking at this?

A.     Yes.

Q.     What type of equipment is this?

A.     Material. So it's the drainage. We call it precast. It's cast on a separate facility and it's brought to the site and used -- and used for drainage for the project.

Q.     And drainage for the project was handled by ISI, right?

A.     Correct, it's in the contract.

Q.     So this would have been equipment that was either ISI's or a subcontractor of ISI's?

A.     Yes, it would be -- it would be material for the contract.

19

Viewed in the light most favorable to the nonmovant, this evidence raises a question of fact regarding whether ISI placed construction material on Huber's property. Nevertheless, ISI argues that the area engineer's testimony that ISI was in compliance with the contract is conclusive as a matter of law because the contract gives the TxDOT engineer the final say. First, ISI cites several excerpts from the area engineer's deposition testimony indicating ISI complied with the contract, including the following:

> Q. But if you were wanting to determine, okay, was a contractor deemed by TxDOT to be in compliance with the contract as of a certain month, in the middle of the contract, you would go back and look and see if the contractor was paid for the work through that month?
>
> A. Yeah, paid, or if there was any documentation notifications.
>
> Q. And TxDOT is not going to pay for work that's not in compliance; is that correct?
>
> A. Not knowingly, correct.
>
> . . .
>
> Q. . . . ISI was paid for all of the work that was performed in front of Plaintiff's property; is that correct?
>
> A. Correct.
>
> Q. And so TxDOT then accepted all of the work ISI performed in front of Plaintiff's property; is that correct?
>
> A. Correct.
>
> . . .

20

Q. And as the area engineer, you accepted ISI's work on the contract?

A. Yes, I did.

ISI then relies on Item 5.1 of the Standard Specifications which are incorporated into the contract:

> The Engineer has the authority to observe, test, inspect, approve, and accept the work. The Engineer decides all questions about the quality and acceptability of materials, work performed, work progress, Contract interpretations, and acceptable Contract fulfillment. The Engineer has the authority to enforce and make effective these decisions.

> The Engineer acts as a referee in all questions arising under the terms of the Contract. The Engineer's decisions will be final and binding.

In short, ISI argues that because the area engineer testified that ISI was paid in full, ISI must have been in compliance with the contract, and because Item 5.1 indicates the area engineer's decisions are final and binding, the area engineer's testimony concerning ISI's compliance is conclusive. We disagree.

We don't doubt that ISI and TxDOT had the right to agree that the engineer's decisions on questions arising under the contract would be binding in a dispute between the contracting parties, but we have serious doubts that by entering into such an agreement the contracting parties somehow altered our standards for what constitutes conclusive evidence in a claim for personal injury, property damage or death sustained by a noncontracting party. The statute requires a contractor to

21

establish that it was in compliance with the "contract documents" at the time of the injury or damage, and our summary judgment rules require the contractor to do so with conclusive evidence. *See Eagle Oil & Gas Co.*, 619 S.W.3d at 705 ("A defendant may obtain summary judgment by conclusively establishing an affirmative defense."). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816.

The evidence in our case differs from that in *Markham*, where it was "undisputed, and the summary judgment evidence conclusively establishe[d], that the TxDOT Engineer approved and accepted the work which was the basis of the Markhams' claims[.]" *Markham*, 647 S.W.3d at 502. In the Markhams' lawsuit arising out of an accident that occurred months later, "the contractors and the Markhams disagree[d] about what height the repaired section of the guardrail should have been," but the court of appeals held "their differing views are made irrelevant by the Engineer's acceptance of the work." *Id*. Here, ISI did not provide the trial court documentation that the area engineer actually approved and accepted the very work that is the basis of Huber's claims; instead, ISI provided the area engineer's generalized testimony, after the fact, that because TxDOT accepted ISI's work, ISI must have been in compliance with the contract.

Our case is more like *Williams Bros. Constr. Co. v. Christ*, No. 14-24-00626-CV, 2025 Tex. App. LEXIS 4944 (Tex. App.—Houston [14th Dist.] July 15, 2025, pet. filed) (mem. op). There, the contract called for a concrete barrier separating opposing traffic in a construction zone, but since a concrete barrier would not fit, Williams Brothers submitted a proposed revision "substituting painted yellow stripes and buttons for the concrete barriers." *Id*. at *3. The revision was never approved in writing and the parties disputed whether it was orally approved, but since the area engineer testified in her deposition that the "use of the stripes and buttons was appropriate given the circumstances[,]" Williams Brothers relied on Item 5.1 to argue the area engineer's approval conclusively established its compliance with the contract. *Id*. at *12-13, 21. Our sister court held otherwise, in part because the area engineer "only verbally approved the deviation from the traffic-control plan after the Christ's accident occurred." *Id*. at *17, 23. *See also Haydon Bldg. Corp. v. Green*, No. 08-23-00073-CV, 2024 Tex. App. LEXIS 5467, at *14, 16 (Tex. App.—El Paso July 31, 2024, pet. denied) (mem. op.) (rejecting contractor's arguments based on Item 5.1 and concluding TxDOT engineer's testimony "that he inspected each highway closure and determined the traffic control barriers were properly in place in accordance with the Plan" was not conclusive in light of other evidence that such barriers were not in place); *Austin Materials v. Rosado*, No. 03-22-00201-CV, 2023 Tex. App. LEXIS 3631, at *17 (Tex. App.—

23

Austin May 26, 2023, pet. denied) (declining to "decide the precise interplay between" Item 5.1 and other contractual provisions because in the absence of evidence that the area engineer "had accepted Austin Materials' work on the day of the accident[,]" the area engineer's deposition testimony that Austin Materials was in compliance with the contract was not conclusive).

ISI presented no evidence that a "question[] ar[ose] under the terms of the Contract[,]" that TxDOT's engineer made a "decision[,]" and that the engineer's decision was included in the "contract documents" in the form of a letter, change order or supplemental agreement in effect at the time of injury or damage.[4] Instead, TxDOT the area engineer testified that *after* Huber notified TxDOT of his complaints, the area engineer looked at the records, spoke with TxDOT's district office and legal counsel about Huber's allegations, and concluded "that TxDOT stayed within the right-of-way, that we used the right-of-way for the project and we didn't damage Mr. Huber's property." ISI's brief appears to rely on this testimony as "confirm[ation]" that "ISI's parking and staging remained within the right-of-way

---

[4]Standard Specification Item 1.3.35 defines "Contract documents" as "Elements of the Contract including, but not limited to the plans, specifications incorporated by reference, special provisions, special specifications, Contract bonds, change orders, and supplemental agreements." Item 1.3.27 allows change orders only if they are in writing. Item 5.3.1 allows the engineer to accept nonconforming work if it is "adequate to serve the design purpose," but the engineer must "document the basis of acceptance by a letter and may adjust the Contract price."

and conformed to the plans." Even if testimony that *TxDOT* stayed within the right-of-way were evidence that *ISI* stayed within the right-of-way, nothing in the language of Item 5.1 warrants elevating the engineer's retrospective opinion testimony to the level of conclusive evidence that the contractor was in compliance with the material contract documents at the time of the injury or damage. We agree with our sister court that "a contractor's non-compliance with TxDOT's specifications might only be discovered after the completion of its highway work and even after the project's acceptance by TxDOT." *A.S. Horner, Inc.*, 656 S.W.3d at 726. The area engineer himself agreed, "The fact that TxDOT did not identify trespasses does not prove that ISI never trespassed[.]"

We conclude the area engineer's testimony was not conclusive and did not prevent the trial court from considering Huber's evidence that ISI was not in compliance at the time of the alleged damage. Because reasonable minds may differ regarding ISI's compliance with any contract documents that were material to any condition or defect that proximately caused Huber's alleged property damage, we conclude ISI failed to carry its burden to conclusively establish its affirmative defense under section 97.002.

## Conclusion

In summary, we conclude that ISI failed to meet its burden to conclusively establish its immunity defense under section 97.002 because: the petition seeks

25

damages other than personal injury, property damage or death, specifically loss of use and lost profit damages from the alleged trespass itself (unauthorized entry interfering with the right of possession) and not derived from any property damage resulting from the alleged trespass; to the extent the petition seeks property damage, the petition alleges such property damage was proximately caused by ISI's activities rather than any condition or defect; and, to the extent the petition seeks property damage proximately caused by a condition or defect, ISI failed to conclusively establish that it was in compliance with contract documents material to the condition or defect at the time the property damage was sustained. We sustain Huber's sole issue on appeal.

We, therefore, reverse the order granting summary judgment and remand to the trial court for further proceedings.

REVERSED AND REMANDED.


KENT CHAMBERS
Justice

Submitted on September 18, 2025
Opinion Delivered April 9, 2026

Before Johnson, Wright and Chambers, JJ.

26